647 S.E.2d 765

**Daniel R. STRAHIN, Plaintiff Below, Appellant**

v.

**Earl SULLIVAN and Farmers & Mechanics Mutual Insurance Company, Defendants Below, Appellees.**

No. 33091.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 10, 2007.

Decided Feb. 21, 2007.

Dissenting Opinion of Justice Starcher June 29, 2007.

Dissenting Opinion of Justice Albright July 12, 2007.

Concurring Opinion of Justice Davis July 19, 2007.

Concurring Opinion of Justice Benjamin July 25, 2007.

Paul T. Farrell, Jr., Esq., Greene, Ketchum, Bailey, Walker, Farrell & Tweel, Huntington, Stephen D. Annand, Esq., The Cochran Firm, Washington, D.C., Leonard T. Kelley, Esq., Kelley Legal Services, Philippi, for Daniel R. Strahin.

James A. Varner, Sr., Esq., Tiffany R. Durst, Esq., Debra Tedeschi Herron, Esq., McNeer, Highland, McMunn & Varner, L.C., Clarksburg, for Farmers & Mechanics Mut. Ins. Co.

MAYNARD, Justice.

This case is before this Court for a second time. The initial complaint was filed in February 1999 after Daniel R. Strahin, the appellant and plaintiff below, was shot in the arm by Robert Cleavenger in 1998 while he was a guest on property owned by Earl Sullivan. In *Strahin v. Cleavenger*, 216 W.Va. 175, 603 S.E.2d 197 (2004) (hereinafter "*Strahin I* "), this Court upheld a jury verdict in favor of Mr. Strahin against Mr. Cleavenger and Mr. Sullivan in the amount of $1,060,556.00. Following the jury verdict but prior to the issuance of this Court's opinion in *Strahin I*, Mr. Strahin amended his complaint to assert, *inter alia,* a claim against Farmers & Mechanics Mutual Insurance Company (hereinafter "Farmers & Mechanics"), the appellee and defendant below, pursuant to this Court's decision in *Shamblin v. Nationwide Mutual Insurance Co.,* 183 W.Va. 585, 396 S.E.2d 766 (1990), which had been assigned to him by Mr. Sullivan before trial. At the time of the incident, Mr. Sullivan had a homeowners' policy issued by Farmers & Mechanics with liability limits of $100,000.00. Farmers & Mechanics answered the amended complaint and moved for summary judgment with regard to the *Shamblin* claim. The circuit court granted the motion for summary judgment by order dated June 17, 2005, which Mr. Strahin now appeals.

Mr. Strahin contends that the circuit court erred by finding that his *Shamblin* claim was barred because Mr. Sullivan's personal assets were not at risk as a result of a Covenant Not to Execute signed by Mr. Strahin and Mr. Sullivan prior to trial. This Court has before it the petition for appeal, the designated record, and the briefs and argument of counsel. For the reasons set forth below, the final order is affirmed.

## I.

### FACTS

In February 1999, Daniel R. Strahin and his parents, James and Willa Strahin, filed suit against Robert Cleavenger, his parents, Larry and Mary Cleavenger, and Earl Sullivan as a result of a shooting incident which occurred in Barbour County on May 31, 1998. Daniel Strahin was shot in the arm by Robert Cleavenger while he was a passenger in a car owned and operated by Earl Sullivan. Daniel Strahin's sister, Marissa Strahin, was also a passenger in the car. Ms. Strahin was

living with Mr. Sullivan but was pregnant with Mr. Cleavenger's child. Mr. Cleavenger was jealous of the relationship between Ms. Strahin and Mr. Sullivan, and there had been previous physical confrontations between Mr. Cleavenger and Mr. Sullivan. Mr. Cleavenger shot at the car with a high-powered rifle as it was leaving property owned by Mr. Sullivan.[1]

The complaint filed by the Strahins alleged, *inter alia*, that Mr. Cleavenger's actions were foreseeable by Mr. Sullivan, and therefore, Daniel Strahin's injuries were proximately caused by Mr. Sullivan's negligence. As noted above, at the time of the incident, Mr. Sullivan was insured by a homeowners' policy issued by Farmers & Mechanics with policy limits of $100,000.00. On April 5, 2000, and September 19, 2000, the Strahins, by counsel, made formal demands for the policy limits in exchange for a full and final release of Mr. Sullivan. Farmers & Mechanics refused both offers of settlement.

Prior to trial, the Strahins, Mr. Sullivan and Mr. Sullivan's automobile insurer, Erie Insurance Company, entered into an Assignment and Covenant Not to Execute (hereinafter referred to as "Assignment" or "Covenant"). Pursuant to the Assignment, the Strahins received $25,000.00 which represented the limits of the bodily injury liability coverage under the Erie policy of insurance issued to Mr. Sullivan. In addition, Mr. Sullivan assigned to

Plaintiffs, their heirs, all representatives and assigns, all of his rights, presently existing or which might hereafter arise, whether in contract or tort, to seek compensation indemnity, defense, compensatory damages, punitive damages, relating to or arising from the Farmers & Mechanics Policy, including but not limited to all claims based on unfair settlement practices, Bad Faith, or refusal to provide defense and/or indemnity.

In exchange, the Assignment stated that,

Plaintiffs, their heirs, legal representatives and assigns, promise, covenant and agree to not execute upon any of the personal assets of Earl Sullivan to recover payments to satisfy any judgment which may hereinafter be acquired by them against Earl Sullivan; and Plaintiffs release and discharge for themselves, their heirs, legal representatives and assigns, Erie Insurance Company and its assigns, from any and all further liability or obligations, claims and demands, or executions whatsoever, in law or in equity, which Plaintiffs ever had or might now have by virtue of any after acquired judgment against Earl Sullivan.

The Assignment further provided that, "Any judgment which may hereinafter be acquired by plaintiffs against Earl Sullivan, shall not be at any time recordable by any party nor at any time become recordable in any county clerk's office in West Virginia or in any other place where it would become a public document[.]" The Assignment was approved by the circuit court by order dated February 26, 2001.

The case proceeded to trial in March 2002, and resulted in a verdict in favor of the Strahins in the amount of $1,060,556.00. The jury found Mr. Cleavenger 70 percent liable based on his intentional act and Mr. Sullivan 30 percent liable based on negligence. In its judgment order, the circuit court found that Mr. Sullivan was jointly and severally liable for the entire verdict. Subsequently, Mr. Sullivan appealed the circuit court's order which this Court affirmed in *Strahin I.*

Following the verdict but prior to the issuance of this Court's June 2004 opinion, Mr. Strahin moved to amend the complaint to add claims against Farmers & Mechanics. Specifically, the amended complaint included a claim for payment of the verdict in excess of Mr. Sullivan's homeowners' policy limits pursuant to *Shamblin, supra,* as well as claims for statutory and/or common law bad faith. Action on the amended complaint was stayed until this Court ruled upon the appeal of the underlying jury verdict. Upon the publication of this Court's opinion, Farmers

---

1. Mr. Cleavenger pled guilty to two counts of malicious assault and served a sentence in the state penitentiary.

& Mechanics tendered payment to the Strahins in the amount of $100,000.00, the liability limits of Mr. Sullivan's policy.

Thereafter, Farmers & Mechanics filed a motion for summary judgment with regard to Mr. Strahin's *Shamblin* claim. Following a hearing on April 8, 2005, the circuit court granted Farmers & Mechanics' motion for summary judgment. The final order was entered on June 17, 2005, and this appeal followed.

## II.

## STANDARD OF REVIEW

This Court has held that, "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963). In Syllabus Point 1 of *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994), this Court further held that, "A circuit court's entry of summary judgment is reviewed *de novo*." This Court has also held that, "Where the issue on an appeal from the circuit court is clearly a question of law . . . we apply a *de novo* standard of review." Syllabus Point 1, in part, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). Accordingly, with this standard in mind, we now consider whether the circuit court erred by granting summary judgment.

## III.

## DISCUSSION

The issue in this case is whether Mr. Strahin, having been assigned Mr. Sullivan's right to collect against Farmers & Mechanics, has a claim for the amount of the verdict in excess of the policy limits of Mr. Sullivan's homeowners' policy based upon this Court's decision in *Shamblin, supra*. In that case, the plaintiff, Clarence Shamblin, brought suit against Nationwide to recover an excess verdict rendered against him in a previous lawsuit arising out of an automobile accident after Nationwide, his insurer, refused to settle the liability claim against him within his Nationwide liability insurance policy limits. This Court held in Syllabus Point 2 of *Shamblin* that,

> Wherever there is a failure on the part of an insurer to settle within policy limits where there exists the opportunity to settle and where such settlement within policy limits would release the insured from any and all personal liability, the insurer has prima facie failed to act in its insured's best interest and such failure to so settle prima facie constitutes bad faith toward its insured.

In this case, Mr. Strahin argues that since Farmers & Mechanics refused to settle the claim against Mr. Sullivan on two occasions for the policy limits of $100,000.00, he, as assignee of Mr. Sullivan's rights, may pursue the *Shamblin* claim.

"[I]t is beyond cavil that the original *Shamblin* doctrine was created to protect policyholders who purchase insurance to safeguard their hard-won personal estates and then find these estates needlessly at risk because of the intransigence of an insurance carrier." *Charles v. State Farm Mutual Automobile Ins. Co.*, 192 W.Va. 293, 298, 452 S.E.2d 384, 389 (1994). To that end, this Court adopted a "hybrid negligence-strict liability" standard of proof in *Shamblin* to be used in actions by insureds against their insurers for failure to settle third-party liability claims against them within their policy limits. 183 W.Va. at 595, 396 S.E.2d at 776. Accordingly, this Court held in Syllabus Points 3 and 4, respectively, of *Shamblin* that:

> It will be the insurer's burden to prove by clear and convincing evidence that it attempted in good faith to negotiate a settlement, that any failure to enter into a settlement where the opportunity to do so existed was based on reasonable and substantial grounds, and that it accorded the interests and rights of the insured at least as great a respect as its own.

> In assessing whether an insurer is liable to its insured for personal liability in excess of policy limits, the proper test to be applied is whether the reasonably prudent insurer would have refused to settle within

policy limits under the facts and circumstances, bearing in mind always its duty of good faith and fair dealing with the insured. Further, in determining whether the efforts of the insurer to reach settlement and to secure a release for its insured as to personal liability are reasonable, the trial court should consider whether there was appropriate investigation and evaluation of the claim based upon objective and cogent evidence; whether the insurer had a reasonable basis to conclude that there was a genuine and substantial issue as to liability of its insured; and whether there was potential for substantial recovery of an excess verdict against its insured. Not one of these factors may be considered to the exclusion of the others.

 In granting summary judgment in favor of Farmers & Mechanics, the circuit court reasoned as follows,

[T]he [c]ourt concludes that Strahin's Amended Complaint clearly demonstrates that he, Sullivan and Erie, as part of the settlement between plaintiff and Sullivan, executed an Assignment, under which Sullivan assigned to plaintiff all of his rights against Farmers & Mechanics, including any claims for bad faith. In return for this Assignment, among other things, Strahin agreed not to execute on the personal assets of Sullivan to satisfy any judgment that might be obtained against Sullivan. Therefore, as Sullivan, Farmers & Mechanics' insured, was released from personal liability in that his personal assets were not at stake in any judgment rendered against him by the plaintiff, Farmers & Mechanics could not have breached its duty of good faith and fair dealing to him, or to the plaintiff, to the extent that the plaintiff possesses Sullivan's rights, as its insured was fully protected from personal liability exposure. In that regard, there is no prima facie bad faith as contemplated by *Shamblin* as Sullivan possessed no personal liability exposure. As there is no personal liability exposure to Farmers & Mechanics' insured, there cannot be a breach of the duty owed to its insured, and the plaintiff's assigned claim

for a *Shamblin* cause of action against Farmers & Mechanics lacks merit, thereby requiring summary judgment in favor of Farmers & Mechanics, as a matter of law.

Having carefully reviewed the Assignment executed by Mr. Strahin and Mr. Sullivan, we find no error in the circuit court's conclusion.

 In *Shamblin*, this Court declined to adopt a strict liability standard whereby an insurer would have been liable any time it refused to settle within policy limits and an excess verdict was later obtained against the insured. Instead, this Court chose to add a negligence component creating the "hybrid negligence-strict liability" standard discussed above. "An action in negligence is based in tort law and is brought to recover damages from a party whose acts or omissions constitute the proximate cause of a claimant's injury." *Strahin I*, 216 W.Va. at 183, 603 S.E.2d at 205. "In the matters of negligence, liability attaches to a wrongdoer ... because of a breach of duty which results in an injury to others." Syllabus Point 2, in part, *Sewell v. Gregory*, 179 W.Va. 585, 371 S.E.2d 82 (1988). Accordingly, to recover under *Shamblin*, there must not only be a negligent refusal to accept a settlement offer by the insurer, but also subsequent harm to the insured. In other words, the insured's personal assets must be at risk. In the case *sub judice*, Mr. Sullivan was not personally liable for the excess verdict at the time it was rendered.

The Covenant executed by Mr. Strahin, Mr. Sullivan, and Mr. Sullivan's automobile insurer prior to trial repeatedly provided that Mr. Sullivan's personal assets would never be at risk. Not only did Mr. Strahin agree not to execute upon the personal assets of Mr. Sullivan, he also agreed to never record any judgment against him. As a result, Mr. Sullivan was not "injured" when the jury returned a verdict against him in excess of his homeowners' policy limits. His personal assets were already protected by the Covenant. Consequently, an essential element of the *Shamblin* claim, i.e., damage to the insured, does not exist in this case.

In support of his contention that his *Shamblin* claim is not barred, Mr. Strahin cites a number of cases dealing with covenants not to execute in the context of consent judg-

ments. In particular, Mr. Strahin relies upon the decision in *Red Giant Oil Company v. Lawlor*, 528 N.W.2d 524 (Iowa 1995). In that case, the insured entered into a consent judgment and assignment of rights in exchange for a covenant not to execute in order to limit his personal liability after his insurer refused to defend him in the underlying litigation. The court found that the covenant was a contract as opposed to a release and concluded that the legal liability of the insured remained if there was insurance coverage. Based upon that decision, Mr. Strahin argues that Farmers & Mechanics remains liable for the excess verdict.

Mr. Strahin's reliance upon *Red Giant* is misplaced, however, as it is easily distinguishable from the case at bar. Here, unlike the insurer in *Red Giant*, Farmers & Mechanics never refused to defend Mr. Sullivan. Farmers & Mechanics provided a defense throughout the trial. Furthermore, after the verdict was upheld on appeal, Farmers & Mechanics promptly paid the policy limits of $100,000.00 to Mr. Strahin. The issue in this case is whether Farmers & Mechanics is liable for the excess verdict pursuant to *Shamblin*. Our review of relevant case law shows that even where there is a failure to defend as in *Red Giant*, insurers have not been held liable in excess of policy limits when the judgment includes an assignment of rights coupled with a covenant not to execute.

In *In re Tutu Water Wells Contamination Litigation*, 78 F.Supp.2d 423 (D.Virgin Islands 1999), an oil company, Texaco, as the assignee of a service station owner's claims, sued the service station's garage liability insurer for bad faith failure to defend and indemnify in connection with lawsuits arising out of gasoline leaks. Texaco sought to enforce a consent judgment it had entered into with the service station owner which was in excess of the policy limits. The consent judgment included an assignment of rights coupled with a covenant not to execute. The Court held that Texaco was not entitled to recover in excess of the policy limits.

In finding that the insurer was not liable for the judgment in excess of the policy limits, the Court explained that,

Numerous jurisdictions in the United States have held insurers liable to the insured for amounts in excess of policy limits when the insurer's breach of its duty to defend has resulted in an excess verdict rendered against the insured. *See, e.g., Newhouse Citizens v. Security Mut. Ins. Co.*, 176 Wis.2d 824, 501 N.W.2d 1, 7 (1993); *Safeway Moving & Storage Corp. v. Aetna Ins. Co.*, 317 F.Supp. 238, 246 (E.D.Va.1970); *Miller v. Elite Ins. Co.*, 100 Cal.App.3d 739, 161 Cal.Rptr. 322, 331 (1980). Research, however, has revealed only a handful of cases in which third parties, seeking to enforce a consent judgment which included a covenant not to execute against the insured, have been entitled to recover against an insurer in excess of policy limits. *See, e.g., Greater New York Mut. Ins. Co. v. North River Ins. Co.*, 85 F.3d 1088 (3d Cir.1996).

It is important to note that, while the above mentioned cases allowed an injured third party to recover in excess of policy limits, *all of these cases involved a post-verdict assignment of rights by the insured.* Thus at some point *prior to* the insured's assignment, the insured was faced with the harsh reality that it was financially accountable to the judgment creditor for an outstanding verdict in excess of policy limits. This represents an important distinction from the instant matter, where the insured's liability was effectively extinguished at the very moment it was acknowledged.

*Id.* at 432. The court in *Tutu* further observed that:

An examination of the relevant caselaw reveals not one instance in which a third party has been entitled to recover against an insurer in excess of policy limits pursuant to a pretrial consent judgment which included an assignment coupled with a covenant not to execute. Moreover, the jurisdictions that have considered these types of arrangements have expressly declined to enforce them, reasoning that " '[t]o recover more than the policy limits from the insurer, the judgment creditor must assert the insured's injury. If the judgment cannot be enforced against the insured, no

such injury exists.'" *Willcox v. American Home Assurance Co.*, 900 F.Supp. 850, 857 (S.D.Tex.1995) (quoting *Whatley v. Dallas*, 758 S.W.2d 301, 310 (Tex.App.—Dallas 1988)).

*Id.*

*Tutu* supports our earlier conclusion that absent personal liability on the part of the insured for the excess verdict, there can be no *Shamblin* claim. Since the Covenant at issue here was executed before the jury rendered its verdict, the resulting judgment was not enforceable against Mr. Sullivan. In fact, as previously noted, it could not even be recorded. Therefore, since Mr. Strahin "stands in Mr. Sullivan's shoes" as his assignee, he simply cannot satisfy the essential legal elements of a *Shamblin* claim. *See* Syllabus Point 10, in part, *Lightner v. Lightner*, 146 W.Va. 1024, 124 S.E.2d 355 (1962) ("[A]n assignee acquires no greater right than that possessed by his assignor, and he stands in his shoes[.]").

■ We note that assignment of a *Shamblin* claim is clearly permissible. This Court has long held that " '[a] chose in action may be validly assigned.' Syl. pt. 2, *Hartman v. Corpening*, 116 W.Va. 31, 178 S.E. 430 (1935)." Syllabus Point 3, *Boarman v. Boarman*, 210 W.Va. 155, 556 S.E.2d 800 (2001).[2] However, the mere assignment of rights does not translate into automatic recovery. Rather, the assignee must still satisfy all of the essential elements of the cause of action. By coupling the assignment in this case with a covenant not to execute prior to trial and thus prior to an excess verdict, the *Shamblin* claim was automatically extinguished.

■ Mr. Strahin contends that by precluding the assignment of *Shamblin* claims prior to trial, insureds will be deprived of the ability to protect their assets. However, we believe that holding an insurer liable for a judgment even when the insured is not legally liable for the same only encourages collusion between the insured and the plaintiff to raid the insurance proceeds. Obviously, an insured who is protected by a covenant not to execute loses the incentive to contest his or her liability. While there was no allegation of collusion between Mr. Strahin and Mr. Sullivan in this case, we believe that public policy as well as case law dictate that when an insured's personal assets are not at stake at the time a verdict in excess of the applicable insurance policy limits is rendered, there is no cause of action pursuant to *Shamblin*. Accordingly, we now hold that in order for an insured or an assignee of an insured to recover the amount of a verdict in excess of the applicable insurance policy limits from an insurer pursuant to this Court's decision in *Shamblin*, the insured must be actually exposed to personal liability in excess of the policy limits at the time the excess verdict is rendered.

■ This Court held in Syllabus Point 4 of *Painter, supra*, that,

> Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

Having found that Mr. Strahin is not able to satisfy all the elements of a *Shamblin* claim, we affirm the decision of the circuit court granting summary judgment in favor of Farmer & Mechanics.[3]

### IV.

### CONCLUSION

Accordingly, for the reasons set forth above, the final order of the Circuit Court of Barbour County entered on June 17, 2005, is affirmed.

Affirmed.

---

**2.** *See generally Aluise v. Nationwide Mutual Fire Ins. Co.*, 218 W.Va. 498, 625 S.E.2d 260 (2005) (assignment of a first party bad faith claim); *Hubbard v. State Farm Indemnity Co.*, 213 W.Va. 542, 584 S.E.2d 176 (2003) (declaratory judgment action against automobile liability insurer filed by assignee of the insured).

**3.** Our decision today has no effect upon Mr. Strahin's statutory and/or common law bad faith claims against Farmers & Mechanics which remain pending in the circuit court.

STARCHER, J., dissenting.

(Filed June 29, 2007)

The majority opinion in this case marks a new low in bad public policymaking by this Court. Without a doubt, the opinion will go down in history as one of the most anti-consumer, anti-contract, pro-insurance company cases ever issued by this Court. The majority opinion invents an interpretation of the common law that is pointless and cruel. Because an insurance company refused to settle a claim that probably could and should have been settled within policy limits, defendants are now forced to go through a painful trial, and to gamble upon losing all of their worldly possessions. And the majority opinion forces plaintiffs to expend precious resources litigating trials to conclusion, not because the insurance company can't or shouldn't settle within policy limits, but because the insurance industry wants to grind plaintiffs down and force them to settle their claims for pennies on the dollar.

When I was elected in 1996, I was proud of the Court's reputation—built by earlier justices—of issuing decisions that forced insurance companies to behave reasonably.[1] These bold decisions leveled the playing field, and encouraged behemoth insurance companies to deal fairly with individual West Virginia citizens. And for asking insurance companies to behave reasonably, West Virginia is now routinely called a "judicial hellhole" with the "worst legal system in America" by various anti-consumer lobbying organizations. The majority opinion suggests that this Court is now bowing to those lobbying efforts.

The majority opinion might leave the reader with the notion that Mr. Strahin's counsel relied primarily upon one case—*Red Giant Oil Company v. Lawlor*, 528 N.W.2d 524 (Iowa, 1995)—as support for their argument that bad faith claims may be assigned. The majority opinion then says that the appellant's reliance upon this one case is "misplaced" because it is "easily distinguishable" since "unlike the insurer in *Red Giant*, Farmers & Mechanics never refused to defend Mr. Sullivan." 220 W.Va. at 336, 647 S.E.2d at 772.

What really happened, however, is that the appellant cited to dozens of cases that have different fact patterns than *Red Giant*, but which reach the same holding. What the majority opinion dismissively overlooks in the above-quoted statement is that there is more than one case in America holding that a bad faith claim may be assigned from the insured to a plaintiff, when the assignment is coupled with a covenant not to execute. In fact, the overwhelming majority of courts in America accept such assignments coupled with covenants not to execute.

The above-quoted statement by the majority is also ill-informed, and fails to recognize—like the insurance industry recognizes—that assignments of rights in tort actions are a daily occurrence and happen for all sorts of reasons. Insurance companies often find that "the insured and the tort claimant have joined forces to fight the insurer," and it is

... normally the case where the insured is potentially faced with a verdict that may expose its personal assets. More precisely, this situation typically arises where the insurer decides not to defend the insured at all or where it provides a defense under a reservation of rights. Even when the insurer decides to defend the suit unconditionally, there may come a time when the insurer does not want to settle the suit for the policy limits. At that point, the insured may believe that its personal assets may be exposed if the lawsuit proceeds to trial.

Jude Francois, "The Assignment of the Insured's Rights," *For the Defense* at 46 (February 2007). But no matter what the defen-

---

1. *See, e.g., Jenkins v. J.C. Penney Cas. Ins. Co.,* 167 W.Va. 597, 280 S.E.2d 252 (1981) (court ruled an insurance claimant could bring an individual lawsuit against insurer that violates the Uniform Unfair Trade Practices Act, even though a majority of jurisdictions had ruled only a state agency could bring such a suit); *Hayseeds, Inc. v. State Farm Fire & Cas.,* 177 W.Va. 323, 352 S.E.2d 73, (1986) (when an insurer breaches an insurance contract, the insured may recover reasonable attorneys' fees in vindicating the claim; damages for net economic loss caused by the delay in settlement; damages for aggravation and inconvenience; and punitive damages); or *Shamblin v. Nationwide Mut. Ins. Co.,* 183 W.Va. 585, 396 S.E.2d 766 (1990).

dant-insured's motivation was for entering into an agreement with a plaintiff, a majority of courts nationwide support such assignment of rights or consent agreements.[2]

Let me say it again: An overwhelming majority of jurisdictions permit the assignment of a bad faith claim when coupled with a covenant not to execute.[3]

The rule followed by most courts is to consider a covenant not to execute "merely a contract and not a release." *Red Giant Oil Co. v. Lawlor*, 528 N.W.2d at 534. Covenants not to execute are different from releases, as the legal liability remains in force against those who have covenants, whereas a release represents "total freedom from liabil-

ity." *Gray v. Grain Dealers Mut. Ins. Co.*, 871 F.2d at 1133. *See also Kobbeman v. Oleson*, 574 N.W.2d at 636 (A covenant not to execute is "merely a contract, and not a release, such that the underlying tort liability remains and a breach of contract action lies in favor of the insured if the injured party seeks to collect his judgment."); *J & J Farmer Leasing, Inc. v. Citizens Ins. Co. of America*, 696 N.W.2d at 684 ("A release immediately discharges an existing claim or right. In contrast, a covenant not to sue is merely an agreement not to sue on an existing claim. It does not extinguish a claim or cause of action. The difference primarily affects third parties, rather than the parties to

**2.** Consent judgments are sometimes referred to as stipulated judgments, *"Damron"* agreements, *"Miller/Shugart"* agreements, or *"Mary Carter"* agreements. *See Damron v. Sledge*, 105 Ariz. 151, 460 P.2d 997 (1969) (landmark case from the Supreme Court of Arizona); *Miller v. Shugart*, 316 N.W.2d 729 (Minn.1982) (landmark case from the Supreme Court of Minnesota). Consent judgments are largely recognized as an appropriate and reasonable procedural remedy available to an insured following the refusal by an insurer to indemnify an insured against a liability claim and/or under circumstances wherein an insurer defends under a reservation of rights. *See Restatement (Second) of Judgments*, § 57–58 (1982); Justin A. Harris, *Judicial Approaches to Stipulated Judgments, Assignments of Rights, and Covenants Not to Execute in Insurance Litigation*, 47 Drake L.Rev. 853 (1999); Steven Plitt, *The Evolving Boundaries of Damron/Morris Agreements: A Search for the Missing Link, A Judicial Determination of the Length of a Reasonable Person's Arm, and Other Progressive Issues*, 35 Ariz. St. L.J. 1331 (2003); Steven L. Pain, et al., *California Practicum: Recent Developments in California Insurance Law: Enforceability of Stipulated Judgments Against Insurance Carriers*, 22 Pepp. L.Rev. 1017 (1995); Chris Wood, *Note: Assignments of Rights and Covenants Not to Execute in Insurance Litigation*, 75 Tex. L.Rev. 1373 (1997); Douglas R. Richmond, *Rights and Responsibilities of Excess Insurers*, 78 Den. U.L.Rev. 29 (2000); Timothy D. Howell, *So Long "Sweetheart"State Farm & Casualty Co. v. Gandy Swings the Pendulum Further to the Right as the Latest in a Line of Setbacks for Texas Plaintiffs*, 29 St. Mary's L.J. 47 (1997); Michael J. Brady et al., *Demise of the Stipulated Judgment as a Basis for Bad Faith Actions*, 60 Def. Couns. J. 59 (1993); 1 R. Long, *The Law of Liability Insurance* § 5.14 (1983); Sheldon R. Shapiro, *Modern Views of State Courts as to Whether Consent Judgment is Entitled to Res Judicata or Collateral Estoppel Effect*, 91 A.L.R.3d 1170, (1979); E.H. Schopler, *Right to Appellate Review of Consent Judgment*, 69 A.L.R.2d 755, (1960); E.H.

Schopler, *Conclusiveness and Effect, Upon Surety, of Default or Consent Judgment against Principal*, 59 A.L.R.2d 752 (1958); Richard D. English, *Alternative Dispute Resolution: Sanctions for Failure to Participate in Good Faith In, or Comply with Agreement made in Mediation*, 43 A.L.R.5th 545 (1996); 1–3 *Insurance Bad Faith Litigation* § 3.08: "Recoverable Damages for Breach of Duty to Settle" (2004); 1–3 *Insurance Bad Faith Litigation* § 3.14: "Insurer's Procedural Options When Questions of Coverage Arise" (2004); Stuart N. Rappaport, *Collateral Estoppel Effects of Judgments Vacated Pursuant to Settlement*, 1987 U. Ill. L.Rev. 731 (1987); Ellen S. Pryor, *The Tort Liability Regime and the Duty to Defend*, 58 Md. L.Rev. 1 (1999); J. Michael Phillips, *Looking Out for Mary Carter: Collusive Settlement Agreements in Washington Tort Litigation*, 69 Wash. L.Rev. 255 (1994).

**3.** *Red Giant Oil Co. v. Lawlor*, 528 N.W.2d 524 (Iowa 1995) (landmark case); *Gray v. Grain Dealers Mut. Ins. Co.*, 871 F.2d 1128 (D.C.Cir. 1989) (landmark case); *J & J Farmer Leasing, Inc. v. Citizens Ins. Co. of America*, 472 Mich. 353, 696 N.W.2d 681 (2005); *Wangler v. Lerol*, 670 N.W.2d 830 (N.D.2003); *Guillen ex rel. Guillen v. Potomac Ins. Co.*, 203 Ill.2d 141, 271 Ill.Dec. 350, 785 N.E.2d 1 (2003); *Stateline Steel Erectors, Inc. v. Shields*, 150 N.H. 332, 837 A.2d 285 (2003); *Pinto v. Allstate Ins. Co.*, 221 F.3d 394 (2nd Cir.2000); *Kobbeman v. Oleson*, 574 N.W.2d 633 (S.D.1998); *Ayers v. C & D General Contractors*, 269 F.Supp.2d 911 (W.D.Ct.Ky. 2003); *Glenn v. Fleming*, 247 Kan. 296, 799 P.2d 79 (1990); *Franco v. Selective Ins. Co.*, 184 F.3d 4 (1st Cir.1999) (applying Maine law); *Gainsco Ins. Co. v. Amoco Prod. Co.*, 53 P.3d 1051 (Wyo. 2002); *Tip's Package Store, Inc. v. Commercial Ins. Managers, Inc.*, 86 S.W.3d 543 (Tenn.Ct.App. 2001); *Campione v. Wilson*, 422 Mass. 185, 661 N.E.2d 658 (1996); *McLellan v. Atchison Ins. Agency Inc.*, 81 Hawai'i 62, 912 P.2d 559 (App. 1996).

the agreement."); *Stateline Steel Erectors, Inc. v. Shields,* 837 A.2d 285 at 290 ("Unlike a release, a covenant not to sue does not relinquish a right of claim, or extinguish a cause of action. A covenant not to sue recognizes the continuation of the obligation or liability; the party making the covenant not to sue agrees only not to assert any right or claim based upon the obligation").

The majority opinion totally rejects the rule followed by the overwhelming majority of jurisdictions, and instead aligns West Virginia's common law with . . . the U.S. Virgin Islands. The *only case* that the majority opinion and the appellee insurance company could find to support their position was from the U.S. Virgin Islands. *In re Tutu Water Wells Contamination,* 78 F.Supp.2d 423 (D.Virgin Islands, 1999).

Based upon this one case from the U.S. Virgin Islands, the majority opinion concludes, as a matter of law, that a *Shamblin* claim cannot be assigned prior to a jury verdict. In so ruling, the Court accepted the invitation of Farmers & Mechanics to add a new twist to our common law. Essentially, our law now holds that a *Shamblin* claim cannot attach unless and until there is an excess verdict that puts the insured's personal assets at stake.

I believe it should make no difference whether an assignment of a *Shamblin* claim precedes or follows an excess verdict. The risk to the insured arises when a settlement offer within policy limits is rejected. The insured must spend days, weeks, or months of trial fearing the loss of everything. The risk becomes reality after an adverse verdict in the absence of an assignment which protects the rights of an insured.

A classic example of this can be found in the recent U.S. Supreme Court case of *State Farm Mutual Insurance v. Campbell,* 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003). State Farm determined its insured was at fault in a collision that resulted in the death of one man and the permanent disability of another. Still, State Farm repeatedly refused to settle within the policy limits. When the jury returned a verdict in excess of policy limits, the lawyer hired by State Farm told the insureds that State Farm wouldn't pay the verdict, and said "You may want to put for sale signs on your property to get things moving." *Id.* at 413, 123 S.Ct. 1513.

Thanks to the majority opinion, I believe this is what the citizens of West Virginia should start getting used to. People better get used to the old days, and should expect their liability insurance company to be allowed to gamble with their assets at trial. And when a jury comes back with a verdict that exceeds the policy limits, the people of West Virginia might want to think about putting a "for sale" sign on their property to get things moving along. Because the people of West Virginia sure won't get any help from this Court.

I therefore respectfully dissent.

ALBRIGHT, J., dissenting.

(Filed July 12, 2007)

While this Court retains the power to accommodate and even encourage the growth and development of the common law in appropriate cases where the Legislature has not spoken,[1] the Court has historically done so only where "necessary to meet society's changing needs" in order to promote justice and the public good. *Morningstar v. Black & Decker Mfg. Co.,* 162 W.Va. 857, 874, 253 S.E.2d 666, 676 (1979).

In this case the majority has acted to alter the common law in derogation of the sound principles of the law which encourage the settlement of claims and the avoidance of vexatious and expensive litigation. *See e.g.,* Syl. Pt. 1, *Sanders v. Roselawn Memorial Gardens, Inc.,* 152 W.Va. 91, 159 S.E.2d 784 (1968); *Horace Mann Insurance Co. v. Adkins,* 215 W.Va. 297, 599 S.E.2d 720 (2004). What other reason would Mr. Strahin have for negotiating the assignment and covenant not to sue with Mr. Sullivan in this case if not to encourage the parties and their insurers to settle the claim without further litigation? The majority opinion completely ignores the incentive value such agreements have had in promoting settlement and thus serves to promote protracted litigation. This result is counter to sound public policy and encour-

---

1. *See e.g. Mallet v. Pickens,* 206 W.Va. 145, 522 S.E.2d 436 (1999).

ages the continuation of litigation out of fear that an early resolution of one party's claim may prevent the timely resolution of it and other claims related to it.

With such result being clearly antithetical to the public good, I respectfully dissent.

DAVIS, C.J., concurring.

(Filed July 19, 2007)

I fully agree with the result reached in the majority opinion in this case. I have chosen to write separately in order to clarify the majority opinion, and to address the complexities of the issue of an assignment and a covenant not to execute. After a brief review of the pertinent procedural facts of the instant case, I will discuss several distinct factual circumstances under which the issue of an insured's assignment of his or her excess verdict claim to a plaintiff, in exchange for the plaintiff's covenant not to execute, may arise. Through this discussion, I will demonstrate that resolution of the issue of whether an assignment and covenant not to execute is valid must be resolved on the particular facts presented.

### A. Relevant Procedural Facts

In this proceeding the Appellant, Daniel R. Strahin, filed a lawsuit against Earl Sullivan and others for injuries he sustained. Prior to the jury verdict, Mr. Strahin entered into an agreement with Mr. Sullivan. Pursuant to the agreement, Mr. Strahin promised *not* to execute or record any judgment rendered against Mr. Sullivan in the lawsuit. In exchange for this agreement, Mr. Sullivan assigned all causes of action he may have had against his insurer, Farmers & Mechanics Mutual Insurance Company (hereinafter "Farmers"), that arose out of the litigation.[1] A verdict was ultimately returned against Mr. Sullivan that was in excess of the liability coverage provided by Farmers.[2] That judgment was appealed by Farmers. This Court affirmed the verdict in *Strahin v. Cleavenger*, 216 W.Va. 175, 603 S.E.2d 197 (2004). After the judgment was affirmed on appeal, Farmers tendered the $100,000 policy limit to Mr. Strahin. However, Farmers did not pay Mr. Strahin the excess verdict amount of $960,556.

Thereafter, Mr. Strahin filed an action against Farmers on several grounds, one of which involved the excess verdict claim that Mr. Sullivan may have had under *Shamblin v. Nationwide Mutual Insurance Co.*, 183 W.Va. 585, 396 S.E.2d 766 (1990).[3] The trial

---

1. Specifically, the pertinent portions of the parties' "Assignment and Covenant Not To Execute" provided that

 Earl Sullivan does hereby assign to Plaintiffs [Daniel R. Strahin and his parents, James and Willa Strahin], their heirs, all representatives and assigns, all of his rights, presently existing or which might hereafter arise, whether in contract or tort, to seek compensation, indemnity, defense, compensatory damages, punitive damages, relating to or arising from the Farmers & Mechanics Policy, including but not limited to all claims based on unfair settlement practices, Bad Faith, or refusal to provide defense and/or indemnity.
 . . . .
 Plaintiffs, their heirs, legal representatives and assigns, promise, covenant and agree not to execute upon any of the personal assets of Earl Sullivan to recover payment to satisfy any judgment which may hereinafter be acquired by them against Earl Sullivan; and Plaintiffs release and discharge for themselves, their heirs, legal representatives and assigns, Erie Insurance Company and its assigns, from any and all further liability or obligations, claims and demands, or executions whatsoever, in law or in equity, which Plaintiffs ever had or

might now have by virtue of any after acquired judgment against Earl Sullivan.

2. Mr. Sullivan's policy of homeowners' insurance issued by Farmer's had coverage limits of $100,000. The jury returned a verdict for the Strahins in the amount of $1,060,556. Although the jury determined that Mr. Sullivan was only thirty percent liable for the Strahins' injuries, while it found Mr. Cleavenger to be seventy percent at fault, the trial court determined that Mr. Sullivan was jointly and severally liable for the entire verdict.

3. In Syllabus point one of *Shamblin v. Nationwide Mutual Insurance Co.*, 183 W.Va. 585, 396 S.E.2d 766 (1990), we held that

 [p]unitive damages may be awarded in favor of an insured against its insurer for failure to settle a claim within policy limits, but the policyholder must establish a high threshold of actual malice in the settlement process. Actual malice means that the insurer actually knew that the claim was proper, but the insurer nonetheless acted willfully, maliciously and intentionally in failing to settle the claim on behalf of its insured.

 *See generally* Syl. pts. 2–4, *Shamblin*, 183 W.Va. 585, 396 S.E.2d 766 (describing additional ele-

court dismissed the excess verdict claim concluding that Mr. Sullivan was not subject to personal liability for the excess verdict because of the pre-verdict covenant not to execute. As a result thereof, Mr. Strahin *could not* assert a *Shamblin* claim against Farmers.

In the case *sub judice*, the majority has affirmed the trial court's ruling. In doing so, the majority opinion holds, in new Syllabus point 9, that,

> [i]n order for an insured or an assignee of an insured to recover the amount of a verdict in excess of the applicable insurance policy limits from an insurer pursuant to this Court's decision in *Shamblin v. Nationwide Mutual Insurance Co.*, 183 W.Va. 585, 396 S.E.2d 766 (1990), the insured must be actually exposed to personal liability in excess of the policy limits at the time the excess verdict is rendered.

While I believe that the majority opinion reaches the correct result in this case, I am somewhat concerned with the expansive reach of Syllabus point 9. Consequently, I will discuss the current state of the law regarding an insured's assignment, to a plaintiff, of the insured's excess verdict claim against his/her insurer in exchange for the plaintiff's covenant not to execute a judgment against the insured.

### B. An Assignment and Covenant Not to Execute May Be Agreed to in a Variety of Situations

Mr. Strahin's brief contained the broad statement that "[a]n overwhelming majority of jurisdictions permit the assignment of a bad faith claim when coupled with a covenant not to execute." Mr. Strahin's brief then cites to fifteen cases that purportedly support his statement. As I will demonstrate in this separate opinion, however, the issue of an assignment and a covenant not to execute is more complex than the proposition stated in Mr. Strahin's brief. The complexity of the issue is quite evident in view of the fact that absolutely none of the fifteen string-cited

cases in Mr. Strahin's brief is on point with the facts of his case.[4] Rather, the cases Mr. Strahin cites are factually distinguishable from the facts herein and instead address such agreements in many other factual contexts. In this regard, the issue of an assignment and a covenant not to execute may arise in at least seven distinct scenarios: (1) postjudgment assignment and covenant not to execute; (2) settlement agreement, assignment and covenant not to execute; (3) agent failure to procure coverage, assignment and covenant not to execute; (4) stipulated judgment, assignment and covenant not to execute; (5) default, assignment and covenant not to execute; (6) denial of coverage, pretrial assignment and covenant not to execute; and finally (7) coverage affirmed, pretrial assignment and covenant not to execute. I will address these categories separately below in the context of the cases cited by Mr. Strahin.

**1. Postjudgment Assignment and Covenant Not to Execute.** The first type of assignment and covenant not to execute agreements are those that are entered into after a judgment. It has been recognized that "most jurisdictions uphold postjudgment assignments of a thing in action in exchange for a covenant not to execute on a judgment." *Kobbeman v. Oleson*, 574 N.W.2d 633, 637 (S.D.1998). *See Gray v. Nationwide Mut. Ins. Co.*, 422 Pa. 500, 223 A.2d 8 (1966); *Ammerman v. Farmers Ins. Exch.*, 22 Utah 2d 187, 450 P.2d 460 (1969). Three of the fifteen string-cited cases in Mr. Strahin's brief involved post-judgment assignments and covenants not to execute: *Pinto v. Allstate Insurance Co.*, 221 F.3d 394 (2d Cir. 2000); *Glenn v. Fleming*, 247 Kan. 296, 799 P.2d 79 (1990); and *J & J Farmer Leasing, Inc. v. Citizens Insurance Co. of America*, 472 Mich. 353, 696 N.W.2d 681 (2005).

First, in the case of *J & J Farmer Leasing, Inc. v. Citizens Insurance Co. of America*, 472 Mich. 353, 696 N.W.2d 681 (2005), the plaintiff brought a wrongful death claim

---

ments of proof necessary to maintain said cause of action).

**4.** I should note that the dissenting opinion of Justice Starcher repeats Mr. Strahin's error, by

citing to cases that are not on point with the fact pattern presented to and addressed by the majority opinion.

against the defendant. The defendant's insurer provided a defense. A jury returned a verdict of $3.2 million. However, the defendant's policy limit was $750,000. Subsequent to the verdict, the defendant assigned the plaintiff his cause of action against the insurer for bad faith failure to settle. In return, the plaintiff agreed not to collect the excess judgment of $2.45 million from the defendant as long as the defendant cooperated in the suit against the insurer.

Thereafter, an action was filed against the insurer. The insurer moved for summary judgment asserting that the covenant not to execute released the insured from any liability, and, thus, the insurer could not be held liable. The trial court denied the motion. The insurer appealed. An appellate court affirmed. The insurer thereafter appealed to the Michigan State Supreme Court. The Michigan Court affirmed and made the following observations:

There is a material difference between a covenant not to sue and a release. A release immediately discharges an existing claim or right. In contrast, a covenant not to sue is merely an agreement not to sue on an existing claim. It does not extinguish a claim or cause of action. The difference primarily affects third parties, rather than the parties to the agreement.

As the circuit court concluded, the agreement in this case is a covenant not to sue. Additionally, the covenant not to sue is not absolute but, rather, is conditioned on the covenantee, [the insured], performing certain duties in the litigation against [the insurer]. Only if [the insured] performs these duties does [the plaintiff's] covenant not to sue on the underlying excess judgment become absolute and release [the insured] of all liability to [the plaintiff].

*J & J Farmer Leasing,* 696 N.W.2d at 684 (citations omitted).

Additionally, in *Glenn v. Fleming,* 247 Kan. 296, 799 P.2d 79 (1990), the plaintiff sued the defendant for personal injuries. The defendant's insurer provided a defense. A jury returned a verdict awarding the plaintiff $1,050,000. However, the defendant's policy limit was $25,000. Judgment was af-

firmed on appeal. Subsequent to the appeal, the plaintiff signed a covenant not to execute upon or impose liens on any other property of the defendant, either real or personal. In the covenant, the defendant assigned all of his contractual rights under his policy with the insurer to the plaintiff. The plaintiff thereafter filed an action against the insurer. The insurer admitted to owing $25,000, its maximum coverage, but denied liability for any judgment in excess of that amount. The trial court reasoned that the insurer did not act in bad faith in failing to settle within the policy limits and granted summary judgment to the insurer. The appellate court affirmed, but for different reasons. The appellate court held that the existence of the covenant not to execute released the insured from liability for the judgment, which nullified the basis for a claim against the insurer for the excess judgment. The plaintiff appealed to the Kansas Supreme Court. The Kansas Court agreed with the trial court and concluded that the plaintiff failed to prove that the insurer acted in bad faith. Therefore, summary judgment on the excess verdict claim was proper. However, the Kansas Court disapproved of the reasoning used by the appellate court. It ruled that a valid covenant not to execute does not extinguish a claim against an insurer:

A majority of courts permit the use of covenants not to execute. One line of reasoning concludes that a covenant is not a release of liability.

Other courts reason that the insured is entitled to use reasonable means to avoid personal liability.

The primary argument against permitting the use of covenants not to execute rests upon the concern that their use will impart a collusive character to a personal injury suit . . .

It would be highly unusual for fraud or collusion to taint the amount of the judgment when, as in the [case at bar], the assignment/covenant is executed after a jury verdict. In the situation where the case is litigated at trial before the entry of judgment, the amount may be assumed to be realistic.

We do express concern over the reasonableness of assignment/covenants in which the amount of the judgment assigned has been determined by agreement of the parties.

In this type of consent judgment case the settlement between the plaintiff and the insured may not represent an arm's length determination of the value of the plaintiff's claim.

*Glenn*, 799 P.2d at 92 (citations omitted).

The last of these postjudgment cases referenced by Mr. Strahin is *Pinto v. Allstate Insurance Co.*, 221 F.3d 394 (2d Cir.2000), in which the plaintiff sued the defendant for a personal injury in a New York state court. The defendant's insurer provided a defense. The parties stipulated as to liability. The plaintiff offered to settle damages for the policy limits of $100,000. The insurer refused to settle. Therefore, the issue of damages was tried before a jury. Plaintiff obtained a verdict against the defendant for $350,000. Subsequent to the verdict, the defendant assigned to the plaintiff his rights against the insurer for failing to settle within the policy limits. In exchange, the plaintiff agreed to "release" the defendant from all liability for the judgment. The plaintiff thereafter filed an action against the insurer in federal court. The district court granted judgment to the plaintiff. One of the issues raised on appeal by the insurer was that the "release" extinguished the claim against the insured, and that, therefore, the plaintiff could not enforce the assignment. The appellate court, applying New York law, rejected the argument:

Although the parties may not have chosen the ideal form to execute their intention, New York courts have ignored the formal distinction between a release and a covenant not to sue or execute in order to avoid an unjust result. Consequently, exchange of a general release for an assignment of a bad faith claim operates to preserve the bad faith claim, as if the parties had executed a covenant not to sue, in the same fashion as the exchanges approved in the cases cited above under New York law. While conscious that more careful drafting would have avoided this issue by using the more conventional form of consideration for the assignment, we decline defendant's invitation to exalt form over the spirit of the agreement and to interpret New York law to establish a rule unknown in other jurisdictions and contrary to the prevailing view of New York courts and the intention of the parties in the underlying action.

*Pinto*, 221 F.3d at 404 (citations omitted).

The rulings in *J & J Farmer*, *Glenn* and *Pinto* specifically answered the issue of whether an insured may assign to a plaintiff a bad faith claim against an insurer for an excess verdict, in exchange for a covenant not to execute, *after* the trial on the merits of each underlying case. The courts in those cases upheld such an assignment and covenant not to execute. Had Mr. Strahin's case presented the specific fact pattern of *J & J Farmer*, *Glenn* and *Pinto*, I would have been inclined to follow the decisions of those courts.[5] However, Mr. Strahin's case *did not* involve execution of a post-judgment assignment and covenant not to execute.

**2. Settlement Agreement, Assignment and Covenant Not to Execute.** Another distinct type of case which forms a part of the fifteen string-cited cases in Mr. Strahin's brief involves settlements not reduced to a judgment: *Guillen ex rel. Guillen v. Potomac Insurance Co. of Illinois*, 203 Ill.2d 141, 271 Ill.Dec. 350, 785 N.E.2d 1 (2003).

In *Guillen ex rel. Guillen v. Potomac Insurance Co. of Illinois*, 203 Ill.2d 141, 271 Ill.Dec. 350, 785 N.E.2d 1 (2003), the plaintiff filed a personal injury action against the defendants. The defendants' insurer denied coverage. The defendants and the plaintiff entered into a court-approved settlement agreement for $600,000, which was within policy limits. However, the agreement contained a covenant not to enforce the settlement against the defendants in exchange for the defendants' assignment of their claim against the insurer to the plaintiff. "No other payment obligation was imposed upon

---

5. Although I believe Syllabus point 9 of the majority opinion is broad, I do not believe that the syllabus point prevents the type of assignment and covenant not to execute that was approved in *J & J Farmer*, *Glenn* and *Pinto*.

the [defendants] and no judgment was entered against them." *Guillen*, 271 Ill.Dec. 350, 785 N.E.2d at 4.

The plaintiff thereafter filed an action against the insurer. The trial court dismissed the action finding that the covenant not to execute voided any liability of the insureds as they were no longer legally obligated to pay. Plaintiff appealed. The appellate court reversed and remanded for a determination of whether the settlement was reasonable. The insurer appealed to the Illinois Supreme Court. The Illinois Court affirmed the reversal. In so doing, the Court made the following observations:

> [The insurer] argues ... that in this case, the [insureds] were never "legally obligated" to pay damages under the terms of their settlement agreement with [the plaintiff] because their payment obligation was limited solely to an assignment of the [insureds'] right to recover under their insurance policy....
>
> ....
>
> Although this is a question of first impression in this court, numerous courts in other jurisdiction[s] have considered it, albeit in a somewhat different context from that presented here. Most often, the interpretation of the "legally obligated to pay" language has arisen when the insured and the injured plaintiff enter into a settlement agreement consisting of a stipulated judgment or consent judgment joined with a covenant not to execute and an assignment of the insured's rights against the insurer to the injured plaintiff.
>
> When confronted by a settlement agreement consisting of a stipulated judgment, an assignment and a covenant not to execute, insurers have maintained, as Potomac does here, that the covenant not to execute effectively extinguishes the insured's legal obligation to pay since the insured has no compelling obligation to pay any sum to the injured party. The majority of courts, however, have rejected this argument.
>
> The construction of the "legally obligated to pay" language adopted by the majority of courts is a technical, rather than practical, one. Courts accepting the conclusion that the insured remains "legally obligated to pay" when the settlement consists of a judgment, covenant not to execute, and an assignment hold that a covenant not to execute is a contract and not a release. The insured still remains liable in tort and a breach of contract action lies if the injured party seeks to collect on the judgment. Thus, under this construction, the insured is still "legally obligated" to the injured plaintiff, and the insured retains the right to indemnification from the insurer.
>
> The rationale supporting this technical construction of the "legally obligated to pay" language is that an insurer who has abandoned the insured by refusing to defend a claim should not be allowed to hide behind the policy language. Further, some courts have observed that if the "legally obligated to pay" language were construed in favor of the insurers, it would defeat the very purpose of the settlement agreement entered into by the insured. And, since the insured has the right to protect itself after the insurer breaches its duty to defend, public policy generally supports giving a technical construction to the "legally obligated to pay" language. Thus, the prevailing view is that a liberal construction of the words "legally obligated to pay" in favor of the insured is appropriate, once the insurer has breached its duty to defend.
>
> We agree with the majority view regarding the construction given the "legally obligated to pay" language. Once the insurer has breached its duty to defend, it is in no position to demand that the insured be held to a strict accounting under the policy language. Fairness requires that the insured, having been wrongfully abandoned by the insurer, be afforded a liberal construction of the "legally obligated to pay" language.

*Guillen*, 271 Ill.Dec. 350, 785 N.E.2d at 12–13 (internal quotations and citations omitted).

It is quite clear that the decision in *Guillen* is factually distinguishable from the facts underlying Mr. Strahin's cause of action. *Guillen* stands for the proposition that, when an insurer denies coverage and fails to provide a defense, the parties may enter into a

settlement agreement within policy limits,[6] which is not reduced to a judgment, that assigns the defendant's cause of action against the insurer to the plaintiff in exchange for a covenant not to execute. Our majority opinion simply does not address the issue of an assignment and covenant not to execute in the context of a settlement agreement which is not reduced to a judgment. *Guillen* presents an issue yet to be decided by this Court.

**3. Agent Failure to Procure Coverage, Assignment and Covenant Not to Execute.** Six of the fifteen string-cited cases in Mr. Strahin's brief involve yet another distinct fact pattern: the failure of an insurance agent to procure adequate coverage. The cases involving such a scenario cited by Mr. Strahin are *McLellan v. Atchison Insurance Agency, Inc.*, 81 Hawai'i 62, 912 P.2d 559 (App.1996); *Campione v. Wilson*, 422 Mass. 185, 661 N.E.2d 658 (1996); *Stateline Steel Erectors, Inc. v. Shields*, 150 N.H. 332, 837 A.2d 285 (2003); *Wangler v. Lerol*, 670 N.W.2d 830 (N.D.2003); *Kobbeman v. Oleson*, 574 N.W.2d 633 (S.D.1998); and *Tip's Package Store, Inc. v. Commercial Insurance Managers, Inc.*, 86 S.W.3d 543 (Tenn. Ct.App.2001).

In *Kobbeman v. Oleson*, 574 N.W.2d 633 (S.D.1998), the plaintiff obtained the policy limits from an insurer for an injury caused by the insured prior to the filing of a lawsuit against the insured. The policy limits did not cover all of the plaintiff's damages. The insured thought that he had procured an umbrella policy; but, his agent failed to include umbrella coverage in the policy. Consequently, the insured assigned the plaintiff his cause of action against the agent for failure to procure the umbrella policy in exchange for a covenant not to execute any judgment that was obtained against him. The agreement also purported to waive any statute of limitations involved in the case. The plaintiff subsequently sued the agent. While the action was pending against the agent, but after the statute of limitations had run, the plaintiff also filed an action against the insured in order to obtain a judgment.[7] The trial court dismissed the action against the agent concluding that the covenant not to execute voided any liability against the agent. On appeal, the South Dakota Supreme Court affirmed, but for different reasons. The South Dakota Court held that such an assignment and covenant not to execute was permitted, but because no timely action had ever been filed against the insured, the covenant barred any claim against him, and, thus, the agent could not be sued:

> In some forums, prejudgment assignments of an insured's claims for bad faith have been disapproved. The rationale of the cases requiring a judgment as a condition precedent to an insured's cause of action against an insurer becomes manifest when we deal with the issue of damages in this case. We are concerned here not only with the fact of damages being clearly established, but the certainty of the amount thereof as well.

> Other decisions look not to the timing, but to the language of the covenant not to execute. [These decisions hold that whether] the assignment was made of a judgment in existence or a judgment to come into existence is not determinative of whether or not the insured's assignee may

---

**6.** The issue of whether an assignee may recover above the policy limits, when there has been a settlement that is not reduced to a judgment, was addressed in *Willcox v. American Home Assurance Co.*, 900 F.Supp. 850 (S.D.Tex.1995). In *Willcox*, the plaintiffs brought a wrongful death action against a law firm. The law firm's professional liability carrier denied coverage, but its general liability carrier defended the action. The law firm entered into a settlement agreement with the plaintiffs that required the plaintiffs to be paid $10 million. However, the plaintiffs agreed not to enforce the settlement against the law firm, but to instead seek payment from the professional liability insurer. The plaintiffs thereafter filed an action against the professional

liability insurer. The professional liability insurer moved for summary judgment. One issue raised was that the covenant not to execute extinguished any claim against the insurer. The district court rejected this argument, but ruled that "[t]he existence of a covenant not to execute . . . precludes recovery in excess of policy limits." *Willcox*, 900 F.Supp. at 857. In denying summary judgment, the court stated that the plaintiffs would only be allowed to recover the policy limit of $500,000.

**7.** This case was pending at the trial court level during the appeal of the case involving the agent.

maintain an action against the insurance company. In bad faith refusal to settle cases, a rule mandating post judgment assignment is more imperative because, in most instances, no cause of action solidifies until judgment is rendered against an insured. On the other hand, in failure to procure insurance cases, claims may reasonably arise long before a judgment. We conclude, with assignments of causes of action for failure to procure insurance, a judgment establishing a loss is critical, but its timing is not.... In any event, so long as one ultimately obtains a judgment in the underlying action to establish the loss before proceeding to trial on the assigned claim, it is not crucial whether the judgment precedes or follows the assignment. Now we come to the final problem: With the statute of limitations having expired, can [the plaintiff] ever obtain a valid judgment against [the insured]?

 ....

After the statute of limitations had expired on his underlying tort claim, [the plaintiff] nonetheless brought a separate suit against [the insured], undoubtedly to seek a judgment above the $100,000 policy limits [the insurer] had already paid. That matter was still pending at the time this appeal reached us. Because the limitations period expired on [the plaintiff's] case against [the insured], [the agent] contend[s] [the insured] is no longer liable to [the plaintiff] for any damages in the future and thus the assignment is ineffective. Though he does not dispute that he commenced the action after the limitations period expired, [the plaintiff] insists his separate case against [the insured] should be allowed to take its course because the assignment waived the statute of limitations defense....

 ....

We are sincerely concerned with the potential for abuse if we uphold the supposed waiver of the statute of limitations in these circumstances.... To sanction a tortfeasor's waiver of the statute of limitations, which in effect extends only another's exposure to liability, invites future mischief and collusion. Once the statute of limita-

tions expired, the basis for both the assignment and covenant dissolved: [the insured] could no longer suffer an excess judgment and thus he (and his assignee) no longer had grounds to sue for failure to obtain an umbrella policy. Validating his waiver would make [the insured's] need to sue the agents a mere pretext. While this is an issue of first impression in South Dakota, ... we know of no legal authority anywhere condoning such an arrangement. The waiver portion of the assignment (if it can be deemed a waiver) is void as against public policy because it prolonged an otherwise closed controversy, solely to extend exposure to others by artificially perpetuating a need for insurance coverage.

*Kobbeman*, 574 N.W.2d at 638–40.

The failure of an insurance agent to procure adequate coverage was also at issue in *Tip's Package Store, Inc. v. Commercial Insurance Managers, Inc.*, 86 S.W.3d 543 (Tenn.Ct.App.2001), in which the insured was sued by two plaintiffs in a wrongful death action. The insured had two insurers, both of whom denied coverage. As a result of the denial of coverage, the insured filed a separate action against the insurance agents for failing to procure coverage for the type of claim asserted against the defendant.

Prior to trial, which was brought by the plaintiffs against the insured, the parties agreed that the insured would make the plaintiffs beneficiaries in the lawsuit the insured had pending against the agents in exchange for a covenant not to enforce the ultimate judgment in the case against the insured. In the plaintiffs' action against the insured, the fact finder returned a verdict against the insured in the amount of $1.3 million, which was in excess of the $1 million coverage the insured thought it had procured. After this verdict was returned, the plaintiffs intervened in the case the insured had brought against the agents.

In the case brought by the insured against the agents, the trial court awarded the insured the $1 million that it should have obtained under the policy, but not the amount that exceeded the policy limits. All parties appealed. The appellate court affirmed the trial court's judgment. In doing so, the ap-

pellate court made clear that the two plaintiffs did not have a direct recovery, but were merely beneficiaries of the judgment received by the insured. The appellate court also held that the insured was not entitled to recover the excess verdict rendered in the cause of action brought by the two plaintiffs:

The award of $1,000,000 puts [the insured] in the exact situation it would have been in if [the agents] had not been negligent. At the same time, however, requiring [the agents] to pay more than that which naturally flowed from the negligent conduct would be improper and result in a windfall to [the insured]. For these reasons, we affirm the judgment of the Chancery Court in favor of [the insured] in its award of $1,000,000 for indemnification against the judgment awarded to the [two plaintiffs] in the Circuit Court action.

*Tip's Package Store*, 86 S.W.3d at 561.

Additionally, in *Wangler v. Lerol*, 670 N.W.2d 830 (N.D.2003), the plaintiff filed an action against the defendant for a personal injury. The defendant's insurer initially provided a defense. After later learning that the defendant did not have coverage for the claim, the insurer denied coverage and refused to provide a defense. The plaintiff and defendant entered into an agreement consenting to judgment. Pursuant to the agreement, the defendant assigned its rights against the insurance agent for failing to procure coverage in exchange for a covenant not to execute the consent judgment against the defendant. Thereafter, the plaintiff filed an action against the insurance agent and insurer under principles of respondeat superior. The trial court dismissed the case on the grounds that "[s]ince [the defendant] could not incur any damages for [plaintiff's] bodily injury based on [the agent's] alleged errors and omissions in failing to procure coverage, it no longer had that claim against [the agent]. Since [the agent] could not be liable, [the insurer] was no longer responsible on a theory of respondeat superior for [the agent's] failure to procure coverage. *Wangler*, 670 N.W.2d at 835. The North Dakota Supreme Court reversed the dismissal. In doing so, the North Dakota Court held that the covenant not to execute "did

not extinguish [the defendant's] damages and the district court erred in dismissing [the plaintiff's] negligence action on this basis." *Wangler*, 670 N.W.2d at 838. *Wangler* further stated that a consent judgment "agreement between the injured plaintiff and an insured could not be enforced against insurance agents.... Consequently, the settlement agreement is not probative on the issues of [the agent's] fault or [the defendant's] damages. [The plaintiff], as the assignee, will have to prove his negligence action against [the agent] in full." *Wangler*, 670 N.W.2d at 838–39.

Furthermore, *Campione v. Wilson*, 422 Mass. 185, 661 N.E.2d 658 (1996), the plaintiffs filed a wrongful death claim against the defendant. At the time of the accident, the defendant thought that it had policy limits of $1 million. The defendant actually had a policy that provided maximum coverage of $500,000. The case was settled for an amount that exceeded the actual policy limits. Under the settlement agreement, the plaintiffs agreed not to execute a stipulated judgment against the defendant in exchange for an assignment of the defendant's cause of action against the insurance brokers for failing to procure adequate insurance coverage. The plaintiffs then filed an action against the brokers. The trial court dismissed the case because the plaintiffs had released the defendant from liability and because the defendant was never liable for damages in excess of the available coverage. Consequently, the plaintiffs did not have an assignable claim. The Massachusetts Supreme Judicial Court reversed and held as follows:

It is clear that, had the underlying tort claim been tried, and a judgment entered in excess of the $500,000 coverage afforded by the [insurance] policy, [the insured's] resulting claim against the defendant insurance brokers could have been assigned.... Nonetheless, we are reluctant to foreclose the possibility of settlement like the one entered into by [the insured] and the plaintiffs. The settlement provides [the insured] with the benefit of being free from personal liability for amounts beyond its certain insurance limits in exchange for [the insured's] cooperation in assisting the plaintiffs in their efforts to

assert [the insured's] claims against the defendants. There is an obvious advantage to the plaintiffs in having a cooperative [insured] in the litigation against the defendants, rather than forcing [the insured] to cooperate in the plaintiffs' attempt to reach and apply, or pursue in other ways, the defendants' liabilities to [the insured] in satisfaction of the deficiency judgment that is probable against [the insured]. It is appropriate to give effect to agreements which have led to a carefully negotiated and detailed settlement, in which the plaintiffs have voluntarily assumed the burden of proving any claims that [the insured] might have against the defendants, in a situation where [the insured's] liability for the accident is reasonably clear, the primary insurer has paid the full limits of its policy, and damages are substantial.

*Campione,* 661 N.E.2d at 662–63 (internal citations omitted).

In *Stateline Steel Erectors, Inc. v. Shields,* 150 N.H. 332, 837 A.2d 285 (2003), the plaintiffs sued the insured in order to be indemnified for monies they paid in settling another lawsuit. The plaintiffs and the insured entered into a stipulated judgment that was in excess of the policy limits. The parties agreed that the insured would assign its rights to sue the insurance agent for the excess judgment, theorizing that the agent negligently failed to provide the type of coverage the insured thought it had purchased. In exchange for the assignment, the plaintiffs agreed not to execute the judgment against the insured or its insurer. The plaintiffs subsequently filed an action against the agent. The trial court dismissed the case stating that the insured was not at risk because of the covenant not to execute. The New Hampshire Supreme Court disagreed:

In our view, the benefits of such settlement agreements outweigh the risks. We believe it preferable to uphold assignments under these circumstances than to allow a negligent party to escape liability. That [the insured] never had to pay the stipulated judgment out of its own pocket is immaterial. But for the defendants' alleged negligence, [the insured] would not have had to enter into the settlement agreement.

*Stateline Steel,* 837 A.2d at 289.

Finally, the case of *McLellan v. Atchison Insurance Agency, Inc.,* 81 Hawai'i 62, 912 P.2d 559 (App.1996), involved three separate accidents that the plaintiff had while riding as a passenger in vehicles owned by the defendant. The defendant's insurer denied coverage as to one of the accidents. However, the defendant's insurer provided a defense for all three claims without a reservation of rights. Two claims were settled. Prior to the trial of the third claim, in which coverage was denied, the plaintiff and the defendant married. Thereafter, the defendant fired counsel retained for him by the insurer. Then he entered into a stipulated judgment. The defendant also assigned to the plaintiff any causes of action he had against the insurer and the insurance agent, for failing to procure adequate coverage, in exchange for a covenant not to execute. The plaintiff then filed suit against the agent and the insurer. The trial court dismissed the case against the agent because of the covenant not to execute. The plaintiff appealed. The appellate court reversed and held that:

[R]ather than allowing a negligent party to escape liability because of a covenant not to execute, we believe that the better choice is to hold that a covenant not to execute does not per se eliminate the fact of damages....

In its order granting [the agent's] motion, the trial court ruled that no damages can arise from [the insured's] assigned claims, as a matter of law, because [the insured] benefited from [the plaintiff's] covenant not to execute.

However, because a covenant not to execute upon the Stipulated Judgment, by itself, did not eliminate the fact of damages, we hold that the trial court erred in its ruling. In addition, because the trial court presumed erroneously that the covenant, by itself, eliminated the fact of damages, we believe that the material fact issue of damages remains disputed and unresolved and, therefore, hold that the

trial court erred in granting [the agent's] motion[.]

*McLellan,* 912 P.2d at 565.

Clearly the decisions in *Kobbeman, Tip's Package Store, Wangler, Campione, Stateline Steel* and *McLellan* are factually distinguishable from the facts underlying Mr. Strahin's cause of action. *Kobbeman, Campione, Stateline Steel* and *McLellan* opine that parties may enter into an agreement that is timely reduced to a judgment, which assigns the defendant's cause of action against an insurance agent for failing to procure adequate coverage, in exchange for a covenant not to execute. *Tip's Package Store* stands for the proposition that, prior to a judgment, the parties may enter an agreement assigning to the plaintiff the defendant's cause of action against an insurance agent for failing to procure coverage in exchange for a covenant not to execute; however, the plaintiff can only recover the limits of the policy the insured should have obtained. The decision in *Wangler* stands for the proposition that an assignment and covenant not to execute are valid against an insurance agent for failing to procure coverage, but a prior judgment cannot be used as a basis for determining damages recoverable against the agent.

The majority opinion in the instant case simply does not address the issue of an assignment and covenant not to execute in the context of an action against an insurance agent's failure to procure coverage. *Kobbeman, Tip's Package Store, Wangler, Campione, Stateline Steel* and *McLellan* present issues that have yet to be decided by this Court.

**4. Stipulated Judgment, Assignment and Covenant Not to Execute.** In Mr. Strahin's brief, he argues that the cases cited by Farmers are distinguishable from his case. He suggests that the cases cited by Farmers involved an assignment and covenant not to execute in the context of a stipulated or consent judgment. Although Mr

Strahin was absolutely correct in noting that the issue of a stipulated judgment, assignment and covenant not to execute is plainly distinguishable from his case, three of his fifteen string-cited cases were, in fact, cases that involved the issue of a stipulated judgment, assignment and covenant not to execute:[8] *Ayers v. C & D General Contractors,* 269 F.Supp.2d 911 (W.D.Ky.2003); *Red Giant Oil Co. v. Lawlor,* 528 N.W.2d 524 (Iowa 1995); and *Gainsco Insurance Co. v. Amoco Production Co.,* 53 P.3d 1051 (Wyo.2002).

In the first of these cases, *Red Giant Oil Co. v. Lawlor,* 528 N.W.2d 524 (Iowa 1995), the plaintiff sued the defendant for negligent work on the plaintiff's property. The defendant had insurance, but the insurer denied coverage. The defendant eventually agreed to stipulate to judgment for the full amount sought by the plaintiff. The defendant also agreed to assign his cause of action against the insurer and its agent for failure to procure the correct coverage in exchange for a covenant not to execute the judgment against the defendant. The plaintiff thereafter filed an action against the insurer and its agent. The trial court dismissed the action. The trial court found that the stipulated judgment was collusive. The Iowa Supreme Court reversed and held:

> [A] claim by an insured against the insurer for failure of the insurer to defend may be assigned to the injured party. Prejudgment assignments-like the one here-in return for covenants not to execute are not inherently collusive or fraudulent. Such agreements are consistent with the general rule of indemnity that permits insureds to protect themselves against insurers who wrongfully refuse to defend.

*Red Giant,* 528 N.W.2d at 533 (citations omitted).

This issue was also examined in *Gainsco Insurance Co. v. Amoco Production Co.,* 53 P.3d 1051 (Wyo.2002), wherein the plaintiff sued the defendant in order to obtain indemnification for a payment made by the plaintiff to settle a prior case.[9] The defendant's in-

---

8. Obviously, other cases we previously have discussed, and which Mr. Strahin cited, also involved stipulated judgments.

9. Another defendant was involved in the case, but resolution of the claim against that defendant need not be discussed here.

surer denied coverage, but provided a defense under a reservation of rights. After the insurer rejected an offer by the plaintiff to settle the case, the defendant agreed to stipulate judgment for an amount that was greater than the policy limits in exchange for a covenant not to execute. The defendant also assigned the plaintiff its bad faith claims against the insurer. The plaintiff thereafter filed an action against the insurer. The trial court granted summary judgment to the plaintiff, and the insurer appealed. The Wyoming Supreme Court reversed and ordered that summary judgment be granted to the insurer. The Wyoming Court did so because it found that the claim against the defendant was within the policy limits. Therefore, the defendant breached its duty to the insurer by agreeing to a judgment that was in excess of the amount the plaintiff could actually receive. Even though the Wyoming Court reversed the lower court's ruling, it rejected the insurer's argument that the covenant not to execute extinguished any claim the insured may have had:

> We agree with [those courts] that find that the inclusion of a covenant not to execute in the settlement agreement between an insured and a claimant, under the circumstances of the case now before us, does not act to negate the fact that a judgment has been entered against the insured and, therefore, does not bar the claimant, as assignee of the insured, from pursuing a claim against the insurer for third-party bad faith. The existence of the judgment, with or without a covenant not to execute, is a detriment to the insured sufficient to support an assignable tort claim. Public policy favors this result in that it allows an insured to reach a reasonable settlement of a case being defended under a reservation of rights and it discourages an insurer from rejecting a reasonable settlement offer. The insurer is adequately protected by the requirement that such settlements be reasonable and by its ability to raise the issues of fraud and collusion.

*Gainsco*, 53 P.3d at 1061.

Finally, in *Ayers v. C & D General Contractors*, 269 F.Supp.2d 911 (W.D.Ky.2003),

the plaintiff filed a wrongful death claim against the defendant. The insurer denied coverage. While the case was pending, the defendant and plaintiff entered into an agreement stipulating judgment in exchange for a covenant not to execute against the defendant and an assignment of the defendant's bad faith claim against the insurer. The plaintiff thereafter filed a motion with the court to enter the stipulated judgment. The insurer filed a motion opposing entry of the stipulated judgment. The district court, in a published opinion, denied the motion to enter the stipulated judgment until a hearing was held to determine the reasonableness of the judgment. The court reasoned as follows:

> Although courts agree that consent judgments coupled with covenants not to execute are enforceable, they have taken diverse approaches to determining reasonableness or collusion. Essentially, the issue is who should bear the primary burden of proof.
>
> Under one approach which is advanced now by Plaintiff, the Ninth Circuit held that courts need not look behind consent judgments to determine if they are reasonable....
>
> Under the second approach, courts hold that an insured only has the initial burden of producing evidence that the settlement is prima facie reasonable in amount and untainted by bad faith. Once the insured satisfies this burden, the burden shifts to the insurer to show, by a preponderance of the evidence, that it is not liable because the settlement is neither reasonable nor reached in good faith.
>
> Last, under a third approach, courts require that the Plaintiff has the burden of showing by a preponderance of the evidence that the judgment amount was reasonable and prudent. Based on this standard, if a plaintiff fails to come forward with sufficient evidence, the consent judgment is presumptively invalid.
>
> After considering the relevant Kentucky decisions and those in other jurisdictions, this Court predicts that Kentucky's highest court would follow the second approach.

*Ayers,* 269 F.Supp.2d at 916 (internal quotations and citations omitted).

It is quite evident, then, that the cases of *Red Giant, Gainsco* and *Ayers* present legal issues that are distinct from Mr. Strahin's case. Each of those cases involved a denial of coverage and a stipulated judgment. Like the cases cited by Mr. Strahin, my research has revealed that many courts permit stipulated judgments, assignments and covenants not to execute when an insurer denies coverage. *See, e.g., American Family Mut. Ins. Co. v. Kivela,* 408 N.E.2d 805 (Ind.Ct.App. 1980); *Associated Wholesale Grocers, Inc. v. Americold Corp.,* 261 Kan. 806, 934 P.2d 65 (1997); *Metcalf v. Hartford Accident & Indem. Co.,* 176 Neb. 468, 126 N.W.2d 471 (1964); *Lancaster v. Royal Ins. Co. of America,* 302 Or. 62, 726 P.2d 371 (1986); *Besel v. Viking Ins. Co. of Wisconsin,* 146 Wash.2d 730, 49 P.3d 887 (2002). However, as the following cases will illustrate, this issue is not well-settled.

The case of *Hamilton v. Maryland Casualty Co.,* 27 Cal.4th 718, 117 Cal.Rptr.2d 318, 41 P.3d 128 (2002), involved a class action against the defendant for an invasion of privacy. The defendant's insurer provided a defense. However, the insurer refused to settle the case for the policy limits. Consequently, the insured entered into an agreement with the plaintiffs that stipulated a judgment in excess of the policy limits in exchange for the plaintiffs agreeing not to execute the judgment against the insured. The agreement also assigned the plaintiffs all rights the insured had against the insurer for its breach of its duty to accept a reasonable settlement demand. The plaintiffs thereafter filed an action against the insurer. The trial court entered judgment for the plaintiffs. The California Supreme Court reversed and held that judgment should have been granted to the insurer:

> [W]here the insurer has accepted defense of the action, no trial has been held to determine the insured's liability, and a covenant not to execute excuses the insured from bearing any actual liability from the stipulated judgment, the entry of a stipulated judgment is insufficient to show ... that the insured has been injured

to any extent by the failure to settle, much less in the amount of the stipulated judgment. In these circumstances, the judgment provides no reliable basis to establish damages resulting from a refusal to settle, an essential element of plaintiffs' cause of action.

*Hamilton,* 117 Cal.Rptr.2d at 323–24, 41 P.3d 128.

Additionally, in *Stubblefield v. St. Paul Fire & Marine Insurance Co.,* 267 Or. 397, 517 P.2d 262 (1973), the plaintiff sued the defendant for alienation of affections. The parties entered into a stipulated judgment after the insurer refused to defend. Under the terms of the agreement, the plaintiff covenanted not to execute against the insured for any amount greater than $5,000 in exchange for the insured's assignment of his rights for all claims greater than $5,000 against the insurer arising from the insurance policy. Judgment was stipulated to and entered against the insured for $50,000. The plaintiff, as assignee, sued the insurer. The Oregon Supreme Court, in affirming the trial court's judgment for the insurer, stated:

> [T]he result of the separate "Covenant Not to Execute" was that the amount which the insured in this case was "legally obligated" to pay to plaintiff as damages for such personal injuries was the sum of $5,000. The insured agreed, however, to pay that amount to plaintiff himself and that amount was expressly excluded from the assignment and was reserved to the insured. It follows that by the terms of the assignment in this case plaintiff acquired no rights which are enforceable by it against defendant.

*Stubblefield,* 517 P.2d at 264.

Moreover, in *Lida Manufacturing Co., Inc. v. U.S. Fire Insurance Co.,* 116 N.C.App. 592, 448 S.E.2d 854 (1994), the insurer refused a defense for the insured in a claim involving property damage. Consequently, the insured agreed to a stipulated judgment, in excess of the policy limits (the insured additionally had in effect an umbrella policy of insurance), in exchange for a covenant not to execute. The insured also assigned his claim against the insurer to the plaintiff. Thereafter, the plaintiff sued the

insurer. The trial court granted summary judgment to the insurer. The appellate court affirmed and stated:

> In this case, [the insured] confessed judgment in [the plaintiff's] lawsuit against [the insured] for negligence and breach of contract in the amount of $1,000,000.00; however, [the plaintiff] agreed that it could not execute this $1,000,000.00 judgment against [the insured]. [The plaintiff] cannot reduce [its] right to damage to judgment because of the covenant not to execute, and [the insured] is therefore not legally obligated to pay [the plaintiff] for any damages resulting from the fire based on negligence or breach of contract. As a result, [the insurer's] obligations under the general policy and under the umbrella policy, if any, were extinguished.

*Lida Mfg.*, 448 S.E.2d at 857 (internal quotations and citation omitted).

The courts in *Hamilton, Stubblefield* and *Lida Manufacturing* clearly illustrate that there are limitations placed on a stipulated judgment, assignment and covenant not to execute. The limitations addressed by these courts and the general rule followed by the courts in *Red Giant, Gainsco* and *Ayers* confirm a point conceded by Mr. Strahin, *i.e.*, his case simply is not on point with those cases involving a stipulated judgment, assignment and covenant not to execute.

**5. Default, Assignment and Covenant Not to Execute.** Two of the fifteen string-cited cases set out in Mr. Strahin's brief involved the issue of a default, assignment and covenant not to execute: *Franco v. Selective Insurance Co.*, 184 F.3d 4 (1st Cir. 1999), and *Gray v. Grain Dealers Mutual Insurance Co.*, 871 F.2d 1128 (D.C.Cir.1989).

In *Gray v. Grain Dealers Mutual Insurance Co.*, 871 F.2d 1128 (D.C.Cir.1989), the plaintiff filed a personal injury claim against the defendant. The defendant's insurer denied coverage. After the defendant failed to file an answer to the complaint, a default was entered. A hearing was held on the issue of damages. The defendant failed to appear at that hearing. After damages were determined in excess of policy limits and judgment was entered against the defendant, the defendant assigned to the plaintiff his rights against the insurer for denying coverage in exchange for a covenant not to execute. The plaintiff thereafter filed an action against the insurer. The trial court granted judgment for the plaintiff on the entire amount of the default judgment award. The insurer appealed arguing, among other things, that it could only be held liable up to the policy limits. The appellate court, applying North Carolina state law, believed that North Carolina would allow recovery of the excess verdict, although no state court decision was on point.[10]

---

**10.** Likewise, although no state law case was on point to provide guidance, the court in *Johnson v. Acceptance Insurance Co.*, 292 F.Supp.2d 857 (N.D.W.Va.2003), relied upon other jurisdictions' decisions to resolve the matter. In *Johnson*, the plaintiff filed a wrongful death action against the defendant in the Circuit Court of Harrison County. The defendant's insurer denied coverage, and the defendant failed to file an answer to the complaint. A default was entered against the defendant. Subsequent to the default, the plaintiff and the defendant entered into a settlement agreement whereby the parties agreed that the plaintiff would not attempt to execute the judgment against the defendant in exchange for an assignment of all of the defendant's rights against its insurer and insurance agent. Thereafter, a hearing was held by the circuit court to determine damages. The court rendered a verdict in the amount of $2,250,000. The plaintiff then filed an action against the insurer and the insurance agent in federal court. The case proceeded to the summary judgment stage at which point all parties filed for summary judgment.

The district court ultimately ruled that the case would proceed to trial on the merits. As a result of the covenant not to execute, the district court addressed the issue of whether the plaintiff would be able to recover the entire amount of the judgment or recover only up to the policy limits. In deciding this issue, the district court observed that no West Virginia case was on point. The district court therefore relied upon two cases decided by other federal district courts, *In re Tutu Water Wells Contamination Litigation*, 78 F.Supp.2d 423 (D.Virgin Islands 1999), and *Willcox v. American Home Assurance Co.*, 900 F.Supp. 850 (S.D.Tex.1995):

> In both *Tutu Water Wells* and *Willcox*, the parties entered into a consent judgment with a covenant not to execute and the damages awarded in the judgment exceeded the policy limits. In both cases, the courts refused to enforce the judgment in excess of the policy limits. In *Willcox*, the court held that the existence of a covenant not to execute ... precludes recovery in excess of policy limits.... This Court adopts the approach used in

Similarly, in *Franco v. Selective Insurance Co.*, 184 F.3d 4 (1st Cir.1999), the plaintiff filed an action against the defendants for a work-related injury. The defendants' insurer denied coverage. A default was entered against the defendants after they failed to timely file an answer to the complaint. After entry of default, the parties entered into a consent judgment. The defendants also assigned to the plaintiff their cause of action against the insurer for failure to defend in exchange for a covenant not to execute the judgment against them. The plaintiff thereafter filed an action in federal court against the insurer. The district court entered judgment in favor of the plaintiff. On appeal, the appellate court affirmed. In doing so, the appellate court noted in passing that the assignment was not void because of the covenant not to execute. The decision stated that "[a]lthough there may be some backlash developing in certain states against 'sweetheart' or 'sham' deals, the majority of courts still accept these arrangements, at least where the insurer has wrongfully failed to provide a defense and the settlement was reasonable and made in good faith." *Franco*, 184 F.3d at 10.

The decisions in *Gray* and *Franco* stand for the proposition that, when an insurer denies coverage and default is obtained against the insured, the insured may assign his/her claim against the insurer to the plaintiff in exchange for a covenant not to execute. Obviously, *Gray* and *Franco* are distinguishable from Mr. Strahin's case. Again, those opinions address issues that have not been resolved by this Court.

**6. Denial of Coverage, Pretrial Assignment and Covenant Not to Execute.** In Mr. Strahin's reply brief he cited, without discussion, *Egger v. Gulf Insurance Co.*, 588 Pa. 287, 903 A.2d 1219 (2006), as support for his position. This case, however, is factually distinguishable from the case *sub judice* in that it involves a denial of coverage, pretrial assignment and covenant not to execute. In *Egger*, the plaintiff sued the defendant for wrongful death. The defendant had a gener-

al policy and an umbrella, or excess, policy. The insurer under the general policy believed that coverage existed and therefore provided a defense. However, the insurer for the excess policy denied coverage. Prior to trial, the defendant and general policy insurer entered into a settlement, whereby the plaintiff agreed not to enforce an award greater than the policy limits against the defendant in exchange for an assignment of the defendant's claim against the excess policy insurer. The jury returned a verdict in excess of the general policy limits. The plaintiff therefore filed an action against the excess policy insurer. The trial court granted judgment for the plaintiff. On appeal, the excess insurer argued that the assignment was void because of the covenant not to execute. The appellate court disagreed:

> [The] primary insurer had tendered its full policy limit of $1,000,000.00 on the day the jury was selected. [The plaintiff] rejected that offer and demanded $1,600,000.00, thus implicating Gulf's excess policy. Because Gulf opted to deny coverage and not participate in the proceedings, any adverse consequences arising from that decision, real or purported, do not constitute increased risk arising from the assignment of the policy.
>
> Gulf's risk remained the same, regardless of whether [the defendant below] or [the plaintiff] held the policy. That risk was that a jury ... would assess damages in an amount greater than $1,000,000.00 for the fatal injuries.... Once ... the original insured[ ] acted negligently in causing the death ..., the bargained-for risk was realized and was not changed by the assignment of rights.... The loss had occurred, and it remained only for that loss to be liquidated through legal proceedings.
>
> The Superior Court correctly rejected Gulf's argument that the "loss" did not occur until the jury reached its excess verdict....
>
> Accordingly, we determine that whether or not the assignment was made prior to the jury verdict is irrelevant, as the obligation of Gulf to provide excess coverage,

these cases. Therefore, plaintiff may recover on the judgment, but only as far as the policy limits allow.

*Johnson*, 292 F.Supp.2d at 867 (internal quotations and citation omitted).

in the event of damages exceeding the limits of the primary policy, arose on the date of the occurrence in 1997.

*Egger*, 903 A.2d at 1228–29.

Obviously, *Egger* contains facts unlike those in Mr. Strahin's case. In the *Strahin* case, Farmers provided a defense without a reservation of rights. Although the majority opinion would appear to preclude an assignment under the facts of *Egger*, I do not subscribe to this implicit holding by the majority opinion. That is, in the instant case, if Farmers had denied coverage and failed to provide a defense, I would have been inclined to follow the reasoning of *Egger*.[11]

### 7. Coverage Affirmed, Pretrial Assignment and Covenant Not to Execute. As I

**11.** Before concluding my discussion on this point, though, I must acknowledge that the ruling in *Egger* is not followed by all courts. For example, in *Elas v. State Farm Mutual Automobile Insurance Co.*, 39 Ill.App.3d 944, 352 N.E.2d 60 (1976), the plaintiff was a passenger in a car when he was injured. The car was not owned by the driver. The plaintiff sued the driver and the car's owner. The car owner's insurer provided a defense. However, the insurer of the driver refused to provide a defense. Prior to trial, the plaintiff and both defendants entered into an agreement. Under that agreement, the plaintiff would recover the policy limits from the car owner's insurer and the driver would assign her rights against her insurer for failing to provide coverage to the plaintiff in exchange for a covenant not to execute the judgment against the defendants. A verdict was returned in the amount of $100,000. The insurer for the car's owner paid the plaintiff the policy limits of $20,000. Thereafter, the plaintiff sued the driver's insurer for the $80,000 excess verdict. However, the driver's policy limit was $30,000. The driver's insurer moved for summary judgment, which was granted by the trial court. The appellate court reversed. Nevertheless, the appellate court found that the insurer could be held liable only for the policy limits, and not for any amount in excess thereof:

> By breaching its duty to participate in the defense, the insurer rendered itself liable for the judgment entered against the insured, if there were no other modifying factors. Though some authorities indicate that the insurer could be liable for the entire judgment even if it exceeds the policy limits, we believe that such rule should apply only when the insured has suffered, or potentially might suffer, actual damages in such amount.... In the cause before us, since [the insured] has insulated her assets from the judgment, by agreement with [the plaintiff], we believe that [the insurer] should be liable only in the amount of its policy limits of $30,000, upon which [the] plaintiff and [the insured] relied in making the settlement.

*Elas*, 352 N.E.2d at 63–64.

Moreover, in *Whatley v. City of Dallas*, 758 S.W.2d 301 (Tex.App.1988), the defendant's insurer refused to provide a defense for him in the plaintiff's action for civil rights violations. Consequently, prior to trial, the defendant agreed to liability in exchange for an agreement by the plaintiff not to execute the judgment against the defendant. A trial was held on damages, and a verdict was awarded that exceeded the policy limits. After the plaintiff succeeded in recovering the policy limits from the insurer, the plaintiff thereafter sued the insurer for the excess verdict. The trial court rendered judgment for the insurer. The trial court's ruling was affirmed on appeal. In doing so, the opinion in *Whatley* made the following observation:

> As a rule, a claimant who covenants not to enforce any judgment he might obtain against an insured individually does not release the insurer who has wrongfully refused to defend its insured from liability within policy limits. This rule is supported by law and policy. The legal basis for the rule is that a person who recovers a judgment against an insured is entitled to enforce the judgment directly against the insurer to the limits of the policy without attempting to enforce it against the insured. Inasmuch as the judgment creditor has the right to enforce his judgment against both the insured and the insurer independently, agreeing not to enforce it against the insured does not affect his right to enforce it against the insurer. The policy basis for the rule is that it reasonably allows the insured who is wrongfully left to defend himself to secure protection against his own individual liability and hold his defense costs to a minimum. As long as the insured does not act in bad faith or in collusion with the person claiming against him, the covenant not to enforce adjudged damages against the insured does not bar recovery from the insurer within its policy limits.

*Whatley*, 758 S.W.2d at 309–10 (internal citations omitted). The court in *Whatley* believed that where a covenant not to execute involved seeking an excess verdict, a different rule applied:

> To recover more than the policy limits from the insurer, the judgment creditor must assert the insured's injury. If the judgment cannot be enforced against the insured, no such injury exists. The insured may assign to his judgment creditor any claim he has against his insurer for payment of the excess award, but such assigned claim is actionable only as long as the insured remains liable for the excess damages. To allow the creditor to release the insured from liability for such excess damages without effecting the release of the insurer would give the creditor and insured the power unilaterally to extend the insurer's liability. This would defeat, not serve, public policy.

*Whatley*, 758 S.W.2d at 310.

have attempted to show throughout this concurrence, Mr. Strahin failed to cite *any* case that squarely addressed the issue of a party seeking an excess verdict from an insurer when there has been an assignment and covenant not to execute *prior* to a jury's determination of liability and damages, and the insurer provided a defense without a reservation of rights. My research uncovered only one case that is even close to the facts of Mr. Strahin's action.

In *Critz v. Farmers Insurance Group,* 230 Cal.App.2d 788, 41 Cal.Rptr. 401 (1964), *disapproved of on other grounds by Crisci v. Security Insurance Co.,* 66 Cal.2d 425, 58 Cal.Rptr. 13, 426 P.2d 173 (1967), the plaintiff was injured by the insured in an automobile accident. Prior to filing a lawsuit against the insured, the plaintiff attempted to settle the case with the insurer for the policy limits of $ 10,000. The insurer, without informing the insured, rejected the offer and tendered a counteroffer of $8,250. The plaintiff rejected the counteroffer and contacted the insured directly. The plaintiff informed the insured of the rejection of the offer to settle for the policy limits and that the insured would be at risk of an excess verdict. After this discussion, the plaintiff and the insured entered into a "pre-suit" agreement, wherein the insured assigned his rights against his insurer for bad faith failure to tender the policy limits in exchange for the plaintiff agreeing not to execute the judgment against him. The plaintiff thereafter sued the insured. After the suit was filed, the insurer learned of the agreement between the plaintiff and the insured and offered to settle for the policy limits. The plaintiff rejected the offer. A jury returned a verdict in favor of the plaintiff for $48,000. The plaintiff subsequently sued the insurer to recover the excess verdict. The trial court rendered judgment for the insurer on the grounds that the pre-suit assignment was invalid. A California court of appeals reversed. In doing so, the following was tersely said regarding the covenant not to execute:

> One more contention should be noted. Defendant argues that the hold harmless clause, in effect a covenant not to execute against [the insured], prevented the latter from suffering any damage by reason of the personal judgment against him. If, as a trier of fact may find, the carrier violated its duty of good faith, the damage, however potential, occurred at that time.... [A] covenant not to execute is not a release. It did not blot out the personal judgment against [the insured] or extinguish his claim for breach of contract against the carrier.

*Critz,* 41 Cal.Rptr. at 410 (citations omitted).

Although the decision in *Critz* has been cited by a number of courts in other jurisdictions, the decision does not appear to have ever been applied to a case that involved seeking an excess verdict from an insurer, when there has been an assignment and covenant not to execute prior to a jury verdict, in which the insurer provided a defense without a reservation of rights. *See Liberty Mut. Ins. Co. v. Davis,* 412 F.2d 475 (5th Cir.1969) (citing to *Critz* in case involving post-default judgment assignment and covenant not to execute), *abrogation recognized by Venn v. St. Paul Fire & Marine Ins. Co.,* 99 F.3d 1058 (11th Cir.1996); *Freeman v. Schmidt Real Estate & Ins., Inc.,* 755 F.2d 135 (8th Cir.1985) (citing to *Critz* in failure to procure coverage case against agent); *Continental Cas. Co. v. Hempel,* 4 Fed.Appx. 703 (10th Cir.2001) (citing to *Critz* in context of consent judgment); *Gray v. Grain Dealers Mut. Ins. Co.,* 871 F.2d 1128 (D.C.Cir.1989) (citing to *Critz* in case involving post-default judgment assignment and covenant not to execute); *Safeway Ins. Co., Inc. v. Botma,* No. CIV00–553–PHX RCB, 2003 WL 24100783 (D.Ariz. Mar. 7, 2003) (citing to *Critz* in context of stipulated judgment); *Whitehead v. Van Leuven,* 347 F.Supp. 505 (D.Idaho 1972) (citing to *Critz* in context of post-verdict assignment and covenant not to execute); *Shaw v. Botens,* 278 F.Supp. 226 (D.Pa.1967) (citing to *Critz* in context of nonassigned direct action against insurer), *rev'd,* 403 F.2d 150 (3d Cir.1968); *National Union Fire Ins. Co. of Pittsburgh v. Seafirst Corp.,* No. C85–396R, 0087 WL 959598 (W.D.Wash. Mar. 25, 1987) (citing to *Critz* in context of stipulated judgment); *Arizona Prop. & Cas. Ins. Guar. Fund v. Helme,* 153 Ariz. 129, 735 P.2d 451 (1987) (citing to *Critz* in context of consent judgment); *Damron v.*

*Sledge,* 105 Ariz. 151, 460 P.2d 997 (1969) (citing to *Critz* in context of refusal to defend case); *Cunningham v. Goettl Air Conditioning, Inc.,* 194 Ariz. 242, 980 P.2d 495 (App. 1997) (citing to *Critz* in context of post-verdict assignment and covenant not to execute), *rev'd,* 194 Ariz. 236, 980 P.2d 489 (1999); *State Farm Mut. Auto. Ins. Co. v. Peaton,* 168 Ariz. 184, 812 P.2d 1002 (App. 1990) (rejecting *Critz* in context of stipulated default); *State Farm Mut. Auto. Ins. Co. v. Paynter,* 122 Ariz. 198, 593 P.2d 948 (App. 1979) (citing to *Critz* in context of refusal to defend case); *Kelly v. Williams,* 411 So.2d 902 (Fla.Dist.Ct.App.1982) (rejecting *Critz* in context of stipulated judgment); *U.S. Fid. & Guar. Co. v. Evans,* 116 Ga.App. 93, 156 S.E.2d 809 (1967) (citing *Critz* in suit by insured against insurer); *Ledingham v. Blue Cross Plan for Hosp. Care of Hosp. Serv. Corp.,* 29 Ill.App.3d 339, 330 N.E.2d 540 (1975) (citing *Critz* in suit by insured against insurer), *rev'd,* 64 Ill.2d 338, 1 Ill.Dec. 75, 356 N.E.2d 75 (1976); *Red Giant Oil Co. v. Lawlor,* 528 N.W.2d 524 (Iowa 1995) (citing to *Critz* in context of consent judgment); *Glenn v. Fleming,* 247 Kan. 296, 799 P.2d 79 (1990) (citing to *Critz* in context of post-verdict assignment and covenant not to execute); *Eyler v. Nationwide Mut. Fire Ins. Co.,* 824 S.W.2d 855 (Ky.1992) (citing to *Critz* in context of refusal to defend case); *State Farm Mut. Auto. Ins. Co. v. Marcum,* 420 S.W.2d 113 (Ky.1967) (citing to *Critz* in context of nonassigned direct action against insurer), *overruled by Manchester Ins. & Indem. Co. v. Grundy,* 531 S.W.2d 493 (Ky.1975); *Rummel v. Lexington Ins. Co.,* 123 N.M. 752, 945 P.2d 970 (1997) (citing to *Critz* in context of post-verdict assignment and covenant not to execute); *Wangler v. Lerol,* 670 N.W.2d 830 (N.D.2003) (citing to *Critz* in failure to procure coverage case against agent); *Smith v. American Family Mut. Ins. Co.,* 294 N.W.2d 751 (N.D.1980) (citing to *Critz* in context of action by insured against insurer); *Thornton v. Personal Serv. Ins. Co.,* No. 2256, 1975 WL 180668 (Ohio Ct.App. July 30, 1975) (citing to *Critz* in context of post-verdict assignment and covenant not to execute), *rev'd,* 48 Ohio St.2d 306, 358 N.E.2d 579 (1976); *Collins v. Fitzwater,* 277 Or. 401, 560 P.2d 1074 (1977) (citing to *Critz* in context of post-verdict assignment ·and covenant not to execute), *overruled by Lancaster v. Royal Ins. Co. of America,* 302 Or. 62, 726 P.2d 371 (1986); *Groce v. Fidelity Gen. Ins. Co.,* 252 Or. 296, 448 P.2d 554 (1968) (citing to *Critz* in context of post-verdict assignment and covenant not to execute); *Brown v. Candelora,* 708 A.2d 104 (Pa.Super.1998) (citing to *Critz* in context of nonassigned direct action against insurer); *In re Loose Estate,* No. 5115, 1968 WL 6866 (Pa. Orphan's Ct. Jan. 29, 1968) (citing to *Critz* in context of nonassigned direct action against insurer); *Tip's Package Store, Inc. v. Commercial Ins. Managers, Inc.,* 86 S.W.3d 543 (Tenn.Ct.App. 2001) (citing to *Critz* in failure to procure coverage case against agent); *State Farm Fire & Cas. Co. v. Gandy,* 925 S.W.2d 696 (Tex.1996) (rejecting *Critz* in context of stipulated judgment); *Garcia v. American Physicians Ins. Exch.,* 812 S.W.2d 25 (Tex.App. 1991) (citing *Critz* in suit by insured against insurer for excess verdict), *rev'd, American Physicians Ins. Exch. v. Garcia,* 876 S.W.2d 842 (Tex.1994); *Kobbeman v. Oleson,* 574 N.W.2d 633 (S.D.1998) (citing to *Critz* in failure to procure coverage case against agent); *Kagele v. Aetna Life & Cas. Co.,* 40 Wash.App. 194, 698 P.2d 90 (1985) (citing to *Critz* in context of refusal to defend case).

### C. Summation

I began this concurring opinion by noting that Mr. Strahin's brief stated that "[a]n overwhelming majority of jurisdictions permit the assignment of a bad faith claim when coupled with a covenant not to execute." After a thorough analysis of the cases cited by Mr. Strahin to support his grossly overbroad statement, I have determined that not one case cited by Mr. Strahin involved the issue of a party seeking an excess verdict from an insurer when there has been an assignment and covenant not to execute prior to a jury's determination of liability and damages and the insurer provided a defense without a reservation of rights. In other words, Mr. Strahin was unable to find any judicial decision that squarely met the facts presented by his case. Although it is true that a majority of jurisdictions permit an assignment and covenant not to execute, all of the decisions addressing this issue have

been resolved based upon the specific facts of each case. That is, all jurisdictions addressing the issue appear to permit an assignment and covenant not to execute under some circumstances, but deny it in others.

Through my independent research, I was able to find only one case that came close to the facts of Mr. Strahin's case. The decision in that case, *Critz v. Farmers Insurance Group*, 230 Cal.App.2d 788, 41 Cal.Rptr. 401 (1964), *disapproved of on other grounds by Crisci v. Security Insurance Co.*, 66 Cal.2d 425, 58 Cal.Rptr. 13, 426 P.2d 173 (1967), set out a terse paragraph approving of a pre-suit covenant not to execute. I am not persuaded to follow *Critz* and apply that decision to Mr. Strahin's case for two basic reasons. First, *Critz* utilized about six pages to discuss the issue of an assignment, which was the basis for the trial court's ruling against the plaintiff, but used only one terse paragraph to dispose of the issue of a covenant not to execute. The abrupt manner in which *Critz* addressed the issue of a covenant not to execute has caused subsequent California appellate courts and the California Supreme Court to impose limitations on *Critz*. *See Hamilton v. Maryland Cas. Co.*, 27 Cal.4th 718, 117 Cal.Rptr.2d 318, 41 P.3d 128 (2002) (rejecting *Critz* in context of stipulated judgment, assignment and covenant not to execute). In my judgment, *Critz* needed to address the issue of a covenant not to execute with far more analysis than that which was provided. A host of policy concerns are at stake when deciding whether to allow an insured to enter a "pre-suit" covenant not to execute when there has been no denial of coverage by the insurer. *Critz* completely ignored those concerns.

The second reason for my hesitation to apply *Critz* to the facts of Mr. Strahin's case is that no court outside the State of California has ever applied *Critz* in the context of a party seeking an excess verdict from an insurer, when there has been an assignment and covenant not to execute prior to a jury's determination of liability and damages, and

the insurer provided a defense without a reservation of rights. *Critz* has been cited and applied in numerous contexts, but never in the latter situation. This fact tells me that plaintiffs' attorneys around the country simply do not, as a matter of course, enter assignment and covenant not to execute agreements under the facts in which Mr. Strahin sought to obtain an excess verdict.[12]

In view of the foregoing, I respectfully concur with the majority's opinion in this case.

BENJAMIN, Justice, concurring.
(Filed July 25, 2007)

In order to establish a claim pursuant to *Shamblin v. Nationwide Mutual Insurance Company*, 183 W.Va. 585, 396 S.E.2d 766 (1990), an insured must be exposed to personal liability for a jury verdict in excess of his or her liability insurance policy limits due to the insurer's unreasonable failure to settle within policy limits prior to the rendering of a jury's verdict. By extinguishing an insured's potential personal liability for an excess verdict prior to the rendering of such a verdict, the parties also extinguish any *Shamblin* claim which may have potentially existed. It is just that simple.

---

12. In any event, it should be noted that our prior decision in *Shamblin v. Nationwide Mutual Insurance Co.*, 183 W.Va. 585, 396 S.E.2d 766 (1990), as well as the ruling rendered by the federal district court in *Johnson v. Acceptance Insurance Co.*, 292 F.Supp.2d 857 (N.D.W.Va. 2003), remain good law and continue to be instructive as to an insured's ability to recover from his/her insurer and the validity of assignments and covenants not to execute.