**Veronica AYERS, Plaintiff,**

v.

**C & D GENERAL CONTRACTORS, et al., Defendants.**

Civil Action No. 3:01–CV–48–H.

United States District Court, W.D. Kentucky.

June 9, 2003.

Thomas E. Alborg, James C. Jardin, Alborg Veiluva & Cannata LLP, Walnut Creek, CA, for Plaintiff.

Jeffrey A. Leon, Leon & Leon, Oakland, CA, Dennis R. Bailey, Bowdy J. Brown, Rushton Stakely Johnston & Garrett, Montgomery, AL, K.P. Dean Harper, Bowles & Verna, Walnut Creek, CA, Nancy Douglas, Carleton Darrell Sooy, Tobin & Tobin, San Francisco, CA, for defendant.

## MEMORANDUM OPINION

HEYBURN, Chief Judge.

The Court now considers whether it should approve a consent judgment entered into between Plaintiff Veronica Ayers and Defendant C & D General Contractors, Inc. ("C & D"). Defendants American States Insurance Company and American Economy Insurance Company ("American") have filed a motion opposing entry of that judgment. This motion raises an issue of first impression under Kentucky law. After surveying Kentucky law, the relevant public policy considerations, and the law in other jurisdictions, the Court concludes that approval of the consent judgment depends upon Plaintiff providing some evidence that the judgment is reasonable and American having an opportunity to respond.

### I.

On January 2, 2001, Plaintiff, for herself and on behalf of her husband, filed this tort action against C & D and American.[1] Shortly thereafter, on February 16, 2001, American wrote C & D stating that it was denying both a defense and insurance coverage to C & D as to Part II (the Employer Liability portion) of the Worker's Compensation/Employer's Liability policy, the Commercial General Liability Policy, and the Umbrella Policies.[2] As part of that claim, American moved for Summary Judgment on May 8, 2002, arguing that the insurance contracts did not otherwise cover C & D for claims arising from Ayers's death. On June 10, 2002, Plaintiff filed both her own cross-motion for summary judgment as well as a motion requesting that this Court enter a Judgment against C & D in the amount of $1 million, along with a Consent to Judgment executed under oath by C & D President David Stone. Under the agreement reached between Ayers and C & D, C & D assigned Ayers any claim it would have against the Defendant insurance companies in return for Ayers not executing the $1 million judgment against C & D. On June 20, 2002, American filed an objection to Plaintiff's motion to enter the Consent Judgment. In its December 6, 2002, Memorandum Opinion, the Court reserved consideration on the validity of the Consent Judgment, but held the insurance contracts did provide C & D with coverage in these circumstances.

### II.

The issue here is whether a consent judgment coupled with a covenant not to execute may be enforced against the insurer.[3] The parties have not cited, and the

---

1. This Court has previously laid out the facts central to this case in its December 6, 2002, Memorandum Opinion, *Ayers v. C & D General Contractors*, 237 F.Supp.2d 764 (W.D.Ky. 2002). Therefore this opinion only states those facts necessary to determining whether the consent judgment is valid.

2. Although the record is not clear, American contends, and Plaintiff provides no evidence to the contrary, that it all along agreed to pay the Plaintiff's claim under the Part I of the WC/EL Policy.

3. In describing the use of stipulated or consent judgments coupled with a covenant not to execute, the Tenth Circuit recently characterized these sometimes confusing agreements in the following useful way:

These arrangements typically involve the following components: (1) the insured pays little or nothing to the plaintiff in the underlying case and may even reserve a portion of any money collected from the insurer; (2) the plaintiff and the insured agree to the entry of a judgment against the insured, fixing the amount of damages or agreeing as to liability and requesting a court to determine the amount of damages; (3) the plaintiff agrees not to seek payment of damages from the insured; "usually this involves a covenant not to execute on the assets of the defendant, but it may be phrased as a covenant to execute on or collect the judgment only from one asset of the defendant (his rights under the insurance policy) or structured as a provision in

Court has not located, any Kentucky cases squarely addressing this question. Therefore, the Court must predict how Kentucky's highest court would rule based on all available data. *Dinsmore Instrument Co. v. Bombardier, Inc.*, 199 F.3d 318, 320 (6th Cir.1999).

## A.

◼ The Court begins its analysis by laying out the most relevant principles of Kentucky law. Kentucky courts have recognized that the duty to defend is broader than the duty to indemnify. *See Lenning v. Commer. Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir.2001); *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 280 (Ky.1991). Insurers have an obligation to defend if there is any allegation "which potentially, possibly or might come within the coverage of the policy." *Brown Found.*, 814 S.W.2d at 279 (citing *O'Bannon v. Aetna Cas. and Sur. Co.*, 678 S.W.2d 390 (Ky. 1984)). Therefore, even if an insurer denies coverage based on a mistaken interpretation, the insurer's actions may still amount to a breach of its contract with the insured, *Eskridge v. Educator & Executive Insurers, Inc.*, 677 S.W.2d 887, 889 (Ky. 1984), and may result in serious legal consequences. *Cincinnati Ins. Co. v. Vance*, 730 S.W.2d 521 (Ky.1987); *Brown Found.*,

814 S.W.2d 273 (Ky.1991). Consequently, an "insurance company, at its own peril, may elect not to defend the original action against a putative insured, although thereafter it may be liable for a subsequent judgment if the policy is judicially determined to provide coverage in the circumstances." 730 S.W.2d at 522.[4]

◼ The damages attending that judgment, however, are not without limits: an insurer's liability only extends to damages that are reasonable and just. This is because under Kentucky law, an insurer's liability is premised on contract law; a denial of a defense therefore amounts to a breach of the policy's terms thereby entitling the aggrieved party "to recover all damages *naturally flowing from the breach . . . ." Id.* at 523 (emphasis added). Similarly, in spite of the insured's authority to settle a claim after an insurer has refused a defense, a plaintiff may not collect any amount desirable if it appears "that the plaintiff and the insured are cooperating together to create an inflated collusive judgment." *O'Bannon*, 678 S.W.2d at 393 (noting that if collusion was present, "the insurer would obviously have a remedy against any obligation to pay such a judgment either when sued on its coverage or by collateral attack on the judgment"); *see also State Farm Mut.*

the judgment making it collectible only to the extent that insurance may apply;" and (4) the insured assigns to the plaintiff all of his or her rights against the insurer. *Continental Cas. Co. v. Hempel*, 4 Fed. Appx. 703 (10th Cir.2001) (*citing* Stephen R. Schmidt, "The Bad Faith Setip," 29 *Tort & Ins. L.J.* 705, 719–20 (1994)).

**4.** Although Plaintiff argues that this decision should decide this case, the Court notes that the *Vance* court did not consider a consent judgment that included a covenant not to execute. In *Vance*, the party which claimed it was insured accepted a default judgment and the insured's employees—who believed they were covered by the insured's policy—entered

into an agreed judgment with the plaintiff for $90,000. Fearing the employees would go after the insurer and seek indemnification, the insurer filed a declaratory judgment action. That is to say, that although the employees entered into an agreed judgment, there was no covenant not to execute between the plaintiff and the employees. Furthermore, the employees did not have the authority to bind the employer's insurance company and therefore authorize the plaintiff to pursue the employer, as C & D arguably did here. The Kentucky Supreme Court did, however, address an insurer's responsibilities and the penalties that accrue if the insurer wrongfully fails to defend which the Court addresses here.

*Auto. Ins. Co. v. Shelton,* 368 S.W.2d 734, 737 (Ky.1963) (recognizing that fraud and collusion are a valid defense which may be interposed by an insurance company when sued on a judgment obtained against its insured).

Comments from Kentucky's highest court therefore support three important propositions relevant here. First, an insurer may be held financially liable in so far as it wrongfully denies liability and is therefore not a party to any settlements conducted by the putative insured on its own behalf. Second, any settlements reached between a putative insured and a plaintiff must be a reasonable assessment of the plaintiff's damages. Third, those settlements must not be the product of collusion. Based on this survey, the Court concludes that while Kentucky courts look favorably upon consent judgments coupled with covenants not to execute as fair outcomes in some cases, Kentucky precedent suggests those judgments should not summarily be upheld. Rather, a court should assess if the consent judgment reflects a reasonable calculation of damages and look carefully at whether collusion is present.

### B.

A majority of courts considering this issue have relied on these same principles in considering the validity of consent judg-ments. These courts are virtually all in agreement that, as a starting point, when an insured and tort claimant enter into an agreed judgment accompanied by a covenant not to execute the judgment, that judgment can be enforceable if coverage exists.[5] *See Franco v. Selective Ins. Co.,* 184 F.3d 4 (1st Cir.1999) (noting that a review of the relevant case law shows that covenants not to execute have not been found to automatically preclude indemnification claims); *see Steil v. Florida Physicians' Ins. Reciprocal,* 448 So.2d 589, 591 (Fla.App.1984) (collecting cases). The reasons underlying this presumption are based on an assessment of which parties should bear the risks of payment or non-payment. As the Minnesota Supreme Court explained in a nearly analogous case, when an insurer contests liability and the plaintiff makes a settlement offer, the insured must be allowed to consider all available options—particularly if the possibility exists that the insurer will be absolved from providing coverage. *Miller v. Shugart,* 316 N.W.2d 729 (Minn.1982).[6] The court reasoned:

> If as here, the insureds are offered a settlement that effectively relieves them of any personal liability, at a time when their insurance coverage is in doubt, surely it cannot be said that it is not in

5. The Supreme Court of Texas appears to be the only court not following this rule. *See State Farm Fire and Cas. Co. v. Gandy,* 925 S.W.2d 696 (Tex.1996). In *Gandy,* the court held that an insured's assignment of his rights against his insurer to a claimant is simply invalid if: (1) the assignment was made prior to the adjudication of the claimant's lawsuit against the insured in a fully adversarial trial; (2) the insurer has tendered a defense; and (3) either (a) the insurer has accepted coverage or (b) the insurer has made a good faith effort to adjudicate coverage issues prior to adjudication of the claimant's lawsuit. *Id.* at 714. The court also found that a judgment for the claimant against the insured, rendered without a fully adversarial trial, was not bind-ing on the insurer or admissible as evidence of damages in an action against the insurer by the claimant as the insured's assignee.

6. Interestingly, the only factual distinction between the *Miller* case and the one before this Court is that the insurer in *Miller* did provide the insured with defense counsel during litigation on the issue of liability. While an appeal on the lower court's finding that coverage did exist was pending, the plaintiff and the insured entered into settlement talks whereby a consent judgment coupled with a covenant not to execute on that judgment against the insured was entered. 316 N.W.2d at 732.

their best interests to accept the offer. Nor, do we think, can the insurer who is disputing coverage compel the insureds to forego a settlement which is in their best interests.

*Id.* at 733–34.

That is to say that by "raising the coverage defense even in good faith, the insurer places the insured in a position where settlement may be necessary for his own protection rather from lack of cooperation with the insurer." *United Services Automobile Ass'n v. Morris,* 154 Ariz. 113, 741 P.2d 246, 252 (1987) (also considering a case involving a consent judgment and a covenant not to execute). The Minnesota court further noted that while it was true an insurer is admittedly placed in a no-win situation if it genuinely believes coverage is lacking, "it is better to have the insurer who makes the decision to contest coverage bear the risk. Of course, the insurer escapes the risk if it should be successful on the coverage issue and, in that event, it is the plaintiff who loses." *Id.* at 734; *see also Midwestern Indemnity Co. v. Laikin,* 119 F.Supp.2d 831, 841 (S.D.Ind.2000) (relying on the rationales set forth by the courts in *Miller* and *Morris* to find that a consent judgment was enforceable). The Court agrees with this analysis and believes Kentucky courts would adopt it as well.

### C.

■ Although courts agree that consent judgments coupled with covenants not to execute are enforceable, they have taken diverse approaches to determining reasonableness or collusion. Essentially, the issue is who should bear the primary burden of proof.

Under one approach which is advanced now by Plaintiff, the Ninth Circuit held that courts need not look behind consent judgments to determine if they are reasonable. *Consolidated American Ins. Co.*

*v. Mike Soper Marine Servs.,* 951 F.2d 186 (9th Cir.1991). Although the Ninth Circuit, applying California law, noted that this approach let the insured off the legal hook without any risk, the Court reasoned this outcome was ultimately fair because the insured's credit and business standing would likely be hampered by a $1 million consent judgment. *Id.* at 190–91. Notably, the *Soper Marine* court made no inquiry into the validity of the agreed settlement amount, nor did it consider the possibility of collusion.

Under the second approach, courts hold that an insured only has the initial burden of producing evidence that the settlement is *"prima facie reasonable* in amount and untainted by bad faith." *Griggs v. Bertram,* 88 N.J. 347, 443 A.2d 163, 173–74 (1982). Once the insured satisfies this burden, the burden shifts to the insurer to show, by a preponderance of the evidence, that it is not liable because the settlement is neither reasonable nor reached in good faith. *Id.; see also Glenn v. Fleming,* 247 Kan. 296, 799 P.2d 79, 92–93 (1990) (applying the *Griggs* approach); *Steil,* 448 So.2d at 592 (same); *Maneikis v. St. Paul Ins. Co.,* 655 F.2d 818, 827 (7th Cir.1981).

Last, under a third approach, courts require that the Plaintiff has the burden of showing by a *preponderance of the evidence* that the judgment amount was reasonable and prudent. *See, e.g., Fisher v. American Family Mutual Ins. Co.,* 579 N.W.2d 599, 607 (N.D.1998); *Red Giant Oil Co. v. Lawlor,* 528 N.W.2d 524, 534 (Iowa 1995). Based on this standard, if a plaintiff fails to come forward with sufficient evidence, the consent judgment is presumptively invalid.

### D.

After considering the relevant Kentucky decisions and those in other jurisdictions, this Court predicts that Kentucky's highest court would follow the second ap-

proach. The Kentucky decisions discussed above reflect a public policy that strikes a balance between placing the burden on the insurer to pay whatever judgment is rendered against it when it falsely denies a defense, *Vance*, 730 S.W.2d at 522, and ensuring that such judgments are reasonable.

Kentucky courts would not follow the first approach because it opens the way to fraud and collusion. Kentucky courts would not accept such settlements blindly. To follow the third approach and place the entire burden of reasonableness on the shoulders of the insured alone would subvert the state's strong interest in requiring insurers to defend, even if under a reservation of rights. On the other hand, the second approach more evenly divides the responsibility between both parties. It ensures that the Plaintiff provides some evidence that the amount was reasonable and therefore arguably negotiated at an arms length, but preserves the insurer's opportunity to challenge the outcome. *See also Griggs*, 443 A.2d at 174 (noting that this rule discourages "collusive or overreaching impositions upon insurance carriers and, at the same time, [is] conducive toward encouraging settlement and protecting an insured in its efforts amicably to resolve a claim against it after having been abandoned by its carrier").

Following the second approach, the Court holds that it will only approve the consent judgment if it finds: (1) Plaintiff has made a prima facie showing of reasonableness, and (2) Defendant American is unable to show by a preponderance of the evidence that the amount is unreasonable or the agreement is the product of collusion or bad faith.

Applying this standard, the Court notes that Plaintiff has put forth *no evidence* of how or why $1 million is a reasonable amount of damages to impose upon C & D and, in turn, allow Plaintiff to recover from C & D's insurers. Applying the aforementioned standard, the Court will therefore allow each party an opportunity to make their respective arguments as to reasonableness, bad faith, and collusion before rendering a final ruling on the consent judgment's validity.[7]

---

7. The Court further notes that it appears the fundamental question in this case is not one of collusion, fraud, or bad faith, but rather turns on the reasonableness of the consent judgment's amount. Though the Court is open to considering these other arguments, it appears in this case that any alleged bad faith or collusive behavior would simply arise out of the fact that the transaction was not conducted at an arms-length as evidenced by the fact that it is unreasonable in amount. In making this observation, the Court draws on language from the Florida Court of Appeals opinion in *Steil v. Florida Physicians' Ins. Reciprocal*, 448 So.2d 589, which the Sixth Circuit has since cited approvingly in a case applying Ohio law. *Romstadt v. Allstate Ins. Co.*, 59 F.3d 608, 612 (6th Cir.1995). In *Steil*, the Florida court aptly remarked:

> The real concern in this type of case is that the settlement between the claimant and the insured may not actually represent an arm's length determination of the worth of the plaintiff's claim. In a situation where the insured actually pays for the settlement of the claims against him or where the case is fully litigated at trial before the entry of a judgment, the amount of the settlement or judgment can be assumed to be realistic. Therefore, if the insurer is later determined to have wrongfully refused to defend and the claim is within the coverage, it will be obligated to pay the amount of the settlement or judgment, at least within its policy limits, in the absence of a showing of collusion or fraud. However, in the instant case or one involving a consent judgment with a covenant not to execute, the settlement figure is more suspect. The conduct of an insured can hardly be characterized as fraudulent simply because he stipulates to a large settlement figure in order to obtain his release from liability. He has little or nothing to lose because he will never be obligated to pay. As a consequence, the settlement of liability and damages may have very little relationship to the strength of the plaintiff's claim. Due to this prob-

The Court will enter an order consistent with this Memorandum Opinion.

### ORDER

The parties have filed cross-motions on the entry of the consent judgment The Court has reviewed the evidence and has filed a Memorandum Opinion. Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiff's motion for entry of the consent judgment is DENIED;

IT IS FURTHER ORDERED that the Court will set a hearing to discuss scheduling on all discovery matters needed to resolve the amount of damages applicable to Plaintiff and C & D's claim against American.

lem, the ordinary standard of collusion or fraud is inappropriate.

448 So.2d at 592.