# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

PAMELA I. MONTGOMERY,          )
Individually and as Administrator )
of the Estate of                )
THOMAS J. MONTGOMERY,          )
THOMAS K. MONTGOMERY,          )
JEREMY MONTGOMERY, and         )
HARRY I. MONTGOMERY,           )
                               )
            Plaintiffs,         )        C.A. No. N11C-11-047 AML
                               )
    v.                          )
                               )
WILLIAM MOORE AGENCY, INC.,    )
LYNN M. HITCHENS, and          )
MID-STATE INSURANCE, INC.,      )
                               )
            Defendants.         )

Date Submitted: March 7, 2016
Date Decided: March 31, 2016

## MEMORANDUM OPINION

**Upon Defendants' Motion for Summary Judgment**
**DENIED**

Timothy E. Lengkeek, Esq., Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware, Attorney for Plaintiffs.

Thomas P. Leff, Esq., Casarino Christman Shalk Ransom & Doss, P.A., Wilmington, Delaware, Attorney for Defendant William Moore Agency

Krista R. Samis, Esq., Eckert Seamans Cherin & Mellott, LLC., Attorney for Defendant Mid-State Insurance, Inc.

**LEGROW, J.**

In their motion for summary judgment presently before the Court, Defendants contend that a stipulation assigning to Plaintiffs certain claims for negligence is either (1) unenforceable because the stipulation released the assignors from liability for damages, thereby extinguishing any negligence claim, or (2) void as the product of collusion. For the reasons set forth below, I conclude Defendants are incorrect on both counts. Plaintiffs are entitled to pursue the assigned claims in a jury trial scheduled to begin in a matter of weeks.

## Background

The following facts are drawn from the record currently before the Court, viewed in the light most favorable to the non-moving party. Mr. and Mrs. Poynter (the "Poynters") own two businesses: Poynter's Tree Farm ("PTF") and Christmas Shop, Inc. ("CSI" and collectively with PTF, "PTF/CSI"). Their daughter, Robin Achenbach, and her husband, Mark Achenbach ("Achenbach" and collectively with Robin, the "Achenbachs") own property leased by the Poynters from which the Poynters grow Christmas trees to supply their business. The Achenbachs also worked at CSI during the holiday season.

On June 28, 2004, Achenbach used his personal vehicle to drive an exterminator to and from the leased property in order to obtain an estimate for spraying bug-infested trees with insecticides. On the way back to the exterminator's office, Achenbach drove directly in the path of a motorcycle driven

1

by Thomas J. Montgomery ("Montgomery") at the intersection of Woodyard Road and Route 13 in Harrington, Delaware. Montgomery attempted to avoid Achenbach's vehicle but was thrown into the air. After living in a vegetative state for six years, Montgomery died on July 25, 2010.

On November 30, 2004, Montgomery's wife filed a personal injury suit, which later became a wrongful death suit, against the Achenbachs, Poynters, and PTF/CSI. In 2008, PTF/CSI filed cross-motions for summary judgment on the issue of whether Achenbach was an agent of PTF/CSI. On January 23, 2009, this Court granted PTF/CSI's motion for summary judgment (the "2009 Summary Judgment Decision"), reasoning that no employment relationship existed between Achenbach and PTF/CSI, and there was no evidence that Achenbach had express, implied, or apparent authority to bind PTF/CSI.[1] On February 18, 2009, the Montgomerys petitioned the Delaware Supreme Court for an interlocutory review of the 2009 Summary Judgment Decision.[2] That interlocutory appeal was denied on February 20, 2009.[3] On January 10, 2011, shortly after the Montgomerys hired new counsel, the Montgomerys, Poynters, and Achenbachs entered into a stipulation to submit to binding arbitration the issue of damages (the "Stipulation").[4]

---

[1] *Montgomery v. Achenbach*, 2009 WL 406810 (Del. Super. Jan. 23, 2009).
[2] *Montgomery v. Achenbach*, 966 A.2d 348 (Del. 2009) (TABLE).
[3] *Id.*
[4] A copy of the Stipulation is attached to Defs.' Mot. Summ. J. as Ex. E. ("Stip.").

2

In the Stipulation, the parties agreed there was no dispute as to liability, causation, or agency. The only issue before the arbitrator, therefore, was a determination and award of damages to the Montgomerys. The Montgomerys, however, agreed not to "execute, garnish, or otherwise collect on the Judgment from [the Achenbachs, Poynters, or PTF/CSI] beyond available insurance coverage, to include coverage under assigned claims."[5] The Stipulation further provided that, regardless of the arbitrator's decision, the Achenbachs, Poynters, and PTF/CSI would face no personal exposure to damages. The parties also agreed to assign to the Montgomerys "any and all of [the Poynters', the Achenbachs', and PTF/CSI's] rights to pursue collection of the Judgment from any and all sources other than [the assignors], and agree to cooperate in [the Montgomerys'] collection efforts."[6] Additionally, the parties agreed to seek vacatur of the 2009 Summary Judgment Decision.

On February 14, 2011, this Court signed the Stipulation and vacated the 2009 Summary Judgment Decision. Meanwhile, the parties engaged in arbitration on January 11, 2011, which resulted in a damages award to the Montgomerys against the Achenbachs, Poynters, and PTF/CSI.[7]

---

[5] Stip. ¶ 3.
[6] *Id.* at ¶ 5.
[7] A copy of the arbitration decision, dated February 3, 2011, is attached as Ex. C to Pls.' Resp. Mot. Summ. J.

In the action presently pending before me, based on the assignment of rights in the Stipulation, the Montgomerys ("Plaintiffs") have brought a negligence claim against the William Moore Agency, Lynn Hitchens, and Mid-State Insurance, Inc. ("Defendants"). In their complaint, Plaintiffs allege Defendants breached the standard of care by failing to provide the correct insurance coverage for CSI. After discovery, Defendants now have moved for summary judgment on the basis that the assignment in the Stipulation is not enforceable.[8]

The Stipulation contains a concession of liability and agency coupled with an agreement not to execute and an assignment. Defendants do not contend that this type of agreement is void *per se* under Delaware law. The vast majority of states permit agreements such as this one, absent specific evidence of collusion between the parties.[9] Moreover, Defendants do not argue that the language of this agreement is invalid. Rather, Defendants contend that the facts surrounding this agreement make it unreasonable and collusive.

Specifically, Defendants argue that the Stipulation released the Poynters and PTF/CSI from liability and, as a result, no negligence action can lie against

---

[8] On December 27, 2013, Defendants previously moved for summary judgment on a different basis. On February 27, 2015, this Court granted Lynn Hitchens' unopposed motion for summary judgment and denied William Moore Agency's motion for summary judgment. *Montgomery v. William Moore Agency*, 2015 WL 1056326 (Del. Super. Feb. 27, 2015) (reargument denied April 14, 2015).

[9] *Associated Ins. Serv., Inc. v. Garcia*, 307 S.W.3d 58, 64-65 (Ky. 2010); *Stateline Steel Erectors, Inc.*, 837 A.2d 285, 288 (N. H. 2003) ("The majority of jurisdictions have found such assignments valid."); *Kobbeman v. Oleson*, 574 N.W.2d 633, 637 (S.D. 1998); *Red Giant Oil Co. v. Lawlor*, 528 N.W.2d 524 (Iowa 1995).

4

Defendants because no damages were suffered. Defendants argue in the alternative that the agreement was collusive. Defendants contend that because PTF/CSI had been dismissed from the action two years before stipulating to agency, PTF/CSI voluntarily incurred damages those entities would not have suffered without the Stipulation. In other words, Defendants argue that, by stipulating to agency and asking this Court to vacate the 2009 Summary Judgment Decision, the parties created a cause of action that did not exist. This conduct, Defendants insist, amounted to collusion.

Plaintiffs respond that the Stipulation was not a release, but rather a covenant not to execute, and the assignment, coupled with the damages award, therefore was sufficient to give rise to a cause of action against Defendants. As to the issue of collusion, Plaintiffs contend that the evidence of agency presented a strong likelihood that the 2009 Summary Judgment Decision would have been reversed on appeal. Plaintiffs further argue that both the language and the circumstances surrounding the Stipulation show it is valid and reasonable. Plaintiffs explain away the two-year gap by a change of counsel, which occurred in August 2010.

## Analysis

Summary judgment may be granted when there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law.[10] If the moving party sustains the initial burden, the burden then shifts to the non-moving party to demonstrate there are material issues of fact for resolution by the ultimate fact-finder.[11]

The Court must view the evidence in the light most favorable to the non-moving party.[12] It will accept "as established all undisputed factual assertions . . . and accept the non-movant's version of any disputed facts. From those accepted facts[,] the court will draw all rational inferences which favor the non-moving party."[13]

There are two questions presented by Defendants' motion. The first such question is whether the Stipulation was a "release," which would have the effect of extinguishing any damages claim against the Poynters and PTF/CSI, such that no negligence claim could be asserted against Defendants. The second question the motion raises is whether – even if the Stipulation is not a release – it is void because of collusion.

---

[10] *E. I. du Pont de Nemours & Co. v. Stonewall Ins. Co.*, 2009 WL 1915212 (Del. Super. June 30, 2009).

[11] *Brzoska v. Olsen*, 668 A.2d 1355, 1363 (Del. 1995).

[12] *Id.* at 1364.

[13] *Marro v. Gopez*, 1994 WL 45338 (Del. Super. Jan. 18, 1998) (citing *Merril*, 606 A.2d at 99-100).

6

## A. The Stipulation is not a release that extinguished liability at the time it was executed.

Although Defendants argue there is no Delaware case on point regarding whether the Stipulation was a release, the Court of Chancery's decision in *Starr v. Nationwide Mutual Insurance Co.* indicates the Stipulation was a covenant not to execute or a "conditional release."[14] In *Starr*, the passenger in an auto accident obtained a judgment against the driver of a van that collided with the car in which the passenger was riding.[15] Attempting to collect the entire judgment, the passenger sued the van driver's insurance carrier.[16] To do that, the passenger entered into an "assignment agreement" under which the van driver "assigned her claims against [her] [i]nsurance [carrier] to [the passenger] in exchange for [passenger's] promise to accept the assignment as full payment and satisfaction of any claims against [the driver]."[17]

In *Starr*, Vice Chancellor Hartnett concluded the assignment agreement was not a present release, explaining that a valid release may be drafted so that it becomes operative in the future, which is known as a "conditional release."[18] The Court reasoned the release at issue in *Starr* was conditional because it was subject to a condition precedent: termination of the passenger's litigation against the

[14] 548 A.2d 22 (Del. Ch. 1988).
[15] *Id.* at 24.
[16] *Id.*
[17] *Id.*
[18] *Id.* at 25-26.

7

insurance carrier.[19] Vice Chancellor Hartnett therefore concluded the release would not become effective until that condition was met, and the driver remained legally obligated on the judgment until that time.[20]

Defendants attempt to distinguish *Starr* on the basis of factual differences – *Starr* involved statutorily required insurance and a jury verdict – and also pointed out that the Supreme Court did not affirm *Starr* on "those grounds" (the conditional release) specifically.[21] These differences are not material distinctions, however, and Defendants concede that the pertinent language in the agreement in *Starr* is "very similar" to the assignment in this case.[22]

The weight of authority in other jurisdictions also supports the conclusion that the Stipulation was not a presently operative release.[23] For example, in *Stateline Steel Erectors, Inc. v. Shields*, the Supreme Court of New Hampshire analyzed an agreement where Stateline Steel Erectors, Inc. stipulated to liability for a substantial judgment upon contractors' indemnification claims and assigned to the contractors "any claims it had for liability arising from the employee's accident, including any claims regarding the provision of insurance coverage to

---

[19] *Id.* at 26.

[20] *Id.* at 26.

[21] Montgomery v. Achenbach, C.A. No.: N11C-11-047 AML, at 17 (Mar. 7, 2016) (TRANSCRIPT) ("Tr."); *see Nationwide Mut. Ins. Co. v. Starr*, 575 A.2d 1083 (Del. 1990) (holding: (1) insurance policy did not give insurer a right of subrogation with respect to uninsured motorist coverage, and (2) action for reformation of policy to include underinsured coverage was not barred by laches).

[22] Tr. 17.

[23] *Stateline Steel Erectors, Inc.*, 837 A.2d 285 at 287; *Kobbeman*, 574 N.W.2d at 637.

Stateline."[24] "In exchange, the contractors agreed 'not to attempt to satisfy the remainder of the stipulated judgment in any way against Stateline' or its insurer"[25] and to satisfy the judgment "only through payment from Stateline's insurer and the prosecution of the assigned claims."[26] Stateline agreed to a payment "by its insurance carrier in full satisfaction of the judgment."[27]

The court found that Stateline was damaged "because of the settlement agreement," concluding Stateline "must still endure the adversity of litigation and might suffer diminishment of its credit rating, among other intangible harms."[28] The Supreme Court of New Hampshire further found that "[a]ccording to the plain meaning of its terms, the agreement was a covenant not to sue or execute the judgment against Stateline, not a release" and that the assignment of the claims therefore was valid.[29]

Similarly, the Supreme Court of South Dakota examined an assignment in which a plaintiff agreed not to execute on a judgment.[30] In *Kobbeman v. Oleson*, the Kobbemans "agree[d] and covenant[ed] not to execute on any judgment obtained against the Daniels" in exchange for an assignment of claims.[31] The court agreed "with those courts upholding assignments of a cause of action in exchange

[24] *Stateline Steel Erectors, Inc.*, 837 A.2d at 287.
[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] *Id.* at 290.
[29] *Id.* at 291.
[30] *See Kobbeman*, 574 N.W.2d 633.
[31] *Id.* at 636.

9

for a covenant not to execute in instances of failure to procure requested insurance."[32] The Supreme Court of South Dakota concluded: "We fail to see why legally it should make any difference who sues the insurer–the insured or the insured's assignee."[33]

Here, although the Montgomerys agreed not to execute or collect on the judgment, the fact of the judgment itself has consequences. For example, potential creditors will be able to discover the existence of the judgment. The Poynters will not be released from the judgment until all efforts are exhausted to collect from the various insurers or agencies. The fact that the Montgomerys will not execute on that judgment does not alter those consequences. Under *Starr*, and similar cases, I find that the Stipulation created a conditional release or a covenant not to execute, not a present, operative release.

## B. The Defendants have not demonstrated by a preponderance of the evidence that the Stipulation was unreasonable or the product of bad faith.

As a preliminary matter, it first is necessary to resolve the burden of proof underlying the question of whether the agreement is unreasonable or collusive. Although it was not raised in the briefs, the parties agreed on the standard during oral argument: Plaintiff bears the burden of producing evidence that the agreement

---

[32] *Id.*

[33] *Id.* at 637 (citing *Red Giant Oil Co. v. Lawlor*, 528 N.W.2d 524 (Iowa 1995)).

is *"prima facie* reasonable."[34] The burden then shifts to the insurer to show, by a preponderance of the evidence, that the agreement was "neither reasonable nor reached in good faith."[35] Several other courts have adopted that standard and, since it was agreed upon by the parties, I will apply it here. In my view, Plaintiffs have established that the Stipulation is *"prima facie* reasonable." Defendants have not produced evidence of unreasonableness.

It is evident, as Defendants reluctantly acknowledge, that the Poynters continued to face the prospect of liability even after the 2009 Summary Judgment Decision due to the possibility that decision would be reversed on appeal.[36] Given the Montgomerys' efforts to pursue an interlocutory appeal, it is reasonable to conclude an appeal of the 2009 decision would have been filed after a final order was entered in that litigation. It also is reasonable to conclude there was at least a fair prospect that appeal would have succeeded. As this Court explained in its February 27, 2015 decision denying Defendants' motion for summary judgment, "there is substantial evidence from which a jury could conclude that Achenbach was the Christmas Shop's employee or agent."[37] This prospect of liability renders

---

[34] *Ayers v. C & D Gen. Contractors*, 269 F.Supp.2d 911 (W.D. Ky. 2003) (citing *Griggs v. Bertram*, 443 A.2d 163, 173-74 (1082)).

[35] *Ayers*, 269 F.Supp.2d at 916.

[36] During oral argument, Defendants' counsel acknowledged that the Poynters' surrendered defense – the summary judgment decision - was not "absolutely winning;" *see Midwestern Indem. Co. v. Laikin*, 119 F.Supp.2d 831, 845 (S.D. Ind. 2000) (finding an "absolute defense" was not surrendered but agreeing that where an insured surrenders "an obviously winning defense to all liability, that surrender would be evidence of bad faith or collusion").

[37] *Montgomery v. William Moore Agency*, 2015 WL 1056326 (Del. Super. Feb. 27, 2015).

11

reasonable the Poynters' and PTF/CSI's decision to enter into the Stipulation. The burden thus shifts to Defendants, who have failed to establish by a preponderance of the evidence that the Poynters' and PTF/CSI's concession of liability and assignment of their claims in exchange for the conditional release was either unreasonable or the product of bad faith. Defendants' evidence of collusion is: (1) the fact that summary judgment was granted to the Poynters and PTF/CSI; (2) the familial relationship between the Poynters and Achenbachs; and (3) the two-year window between the 2009 Summary Judgment Decision and the Stipulation.

The Poynters may well have wanted to shield their daughter and son-in-law from liability, but little discovery was taken on the issue and the Defendants adduced no evidence of collusion from the discovery they did take. For example, Defendants deposed the Poynters' personal counsel, who negotiated the Stipulation, but Defendants point to no evidence of collusion from that deposition. It appears the two-year delay between 2009 and 2011 was attributable to the Montgomerys' change in counsel, rather than any collusive intent by the parties to the Stipulation. It also is significant that the concession of agency by the Achenbachs, Poynters, and PTF/CSI is not binding on Defendants and will not be offered into evidence at trial by the Montgomerys. Thus, Defendants remain free

to contest agency at trial, an issue this Court already has determined is a disputed fact that must be submitted to the jury.[38]

Contrary to Defendants' argument, my conclusion that the Stipulation and assignment are valid and enforceable does not contravene public policy. Public policy favors allowing insured parties to act in their best interest.[39] An insured "must be allowed to consider all available options-particularly if the possibility exists that the insurer will be absolved from providing coverage."[40] Facing the possibility that the 2009 Summary Judgment Decision would be overturned on appeal and they would be left with a substantial judgment against them, the Poynters behaved rationally. Defendants are in no worse position by the Poynters' decision than Defendants would have faced if the summary judgment decision had been overturned on appeal.

---

[38] *Id.*

[39] *See Miller v. Shugart*, 316 N.W.2d 729, 733-34 (Minn. 1982) ("If as here, the insurers are offered a settlement that effectively relieves them of any personal liability, at a time when their insurance coverage is in doubt, surely it cannot be said that it is not in their best interests to accept the offer. Nor, do we think, can the insurer who is disputing coverage compel the insureds to forego a settlement which is in their best interests.").

[40] *Ayers*, 269 F.Supp.2d at 915 (citing *Miller*, 316 N.W.2d 729).

13

## Conclusion

In conclusion, the Stipulation is a conditional release and the Defendants have failed to show it is more likely than not that the Stipulation is a collusive agreement. For the foregoing reasons, Defendants' Motion for Summary Judgment is **DENIED.**

Abigail M. LeGrow, Judge

Original to Prothonotary

14